# EXHIBIT 7

1      IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

2                SIXTH APPELLATE DISTRICT

3                     ---oOo---

4


5   THE PEOPLE OF THE STATE OF              )
    CALIFORNIA,                             )
6                                           )
             PLAINTIFF-RESPONDENT,          )
7                                           )
                 VS.                        )   CASE NO. CC241061
8                                           )
    STEVE BADUE,                            )
9                                           )
             DEFENDANT-APPELLANT.           )
10  _____)

11                    ---oOo---

12
               REPORTER'S TRANSCRIPT ON APPEAL
13
        FROM THE JUDGMENT OF THE SUPERIOR COURT
14
        OF THE STATE OF CALIFORNIA, IN AND FOR
15
               THE COUNTY OF SANTA CLARA
16
        BEFORE THE HONORABLE RISE JONES PICHON, JUDGE
17
                      ---oOo---
18

19          PROCEEDINGS HELD ON FEBRUARY 3, 2003

20                    VOLUME ONE

21                PAGES 1 THROUGH 6

22

23  APPEARANCES:

24  FOR PLAINTIFF-RESPONDENT:   OFFICE OF THE ATTORNEY GENERAL
                                BY:  DAN LUNGREN, ATTORNEY
25                              GENERAL OF THE STATE OF
                                CALIFORNIA
26

27  FOR DEFENDANT-APPELLANT:    IN PROPRIA PERSONA

28

1      IN THE SUPERIOR COURT OF THE STATE OF CALIFORNIA

2        SANTA CLARA COUNTY JUDICIAL DISTRICT

3           HALL OF JUSTICE FACILITY

4     BEFORE THE HONORABLE RISE JONES PICHON, JUDGE

5           DEPARTMENT NO. 36

6             ---oOo---

7   THE PEOPLE OF THE STATE    ) CASE NO. CC241061
    OF CALIFORNIA,             )

8                     )

9          PLAINTIFF,    )
                     )
   VS.                  )

10                     )

11   STEVE BADUE,          )
                     )

12          DEFENDANT.     )

13

14

15           REPORTER'S TRANSCRIPT

16                OF

17             PROCEEDINGS

18          FEBRUARY 3, 2003

19            VOLUME I

20         PAGES 2 THROUGH 6

21

22   A P P E A R A N C E S:

23   FOR THE PEOPLE:        STEVEN DICK,
                       DEPUTY DISTRICT ATTORNEY

24

25   FOR THE DEFENDANT:     RANDY DANTO,
                       DEPUTY PUBLIC DEFENDER

26   COURT REPORTER:        PATRICIA NORRIS,
                       C.S.R. 8475

27

28

COPY

3

| | |
|---|---|
| 1 | SAN JOSE, CALIFORNIA             FEBRUARY 3, 2003 |
| 2 | P R O C E E D I N G S |
| 3 | THE COURT:  THIS IS THE MATTER OF THE PEOPLE OF |
| 4 | THE STATE OF CALIFORNIA VERSUS STEVE BADUE. |
| 5 | MS. DANTO:  RANDY DANTO ON HIS BEHALF. |
| 6 | MR. DICK:  STEVEN DICK FOR THE PEOPLE. |
| 7 | MS. DANTO:  YOUR HONOR, I SPOKE WITH MY CLIENT |
| 8 | DURING THE RECESS, AND MY CLIENT INDICATED TO ME THAT |
| 9 | HE'S WILLING TO GIVE UP HIS RIGHTS TO A JURY TRIAL WITH |
| 10 | THE UNDERSTANDING THAT HE IS GOING TO HAVE A COURT TRIAL. |
| 11 | THE COURT:  ALL RIGHT. |
| 12 | MR. BADUE, YOUR ATTORNEY HAS INDICATED THAT YOU |
| 13 | WANT TO GIVE UP YOUR RIGHT TO A JURY TRIAL.  IT IS MY |
| 14 | DUTY TO ADVISE YOU THAT THE CONSTITUTION GIVES YOU THE |
| 15 | RIGHT OF A TRIAL BY A JURY OF 12 PEOPLE, THAT IS 12 |
| 16 | PEOPLE SELECTED BY YOUR ATTORNEY AND THE PROSECUTOR FROM |
| 17 | THE COMMUNITY, AND THEY WILL DECIDE THE QUESTION OF YOUR |
| 18 | GUILT OR INNOCENCE AS TO THE CHARGES FILED AGAINST YOU IN |
| 19 | THE INFORMATION. |
| 20 | YOU MUST PERSONALLY DECIDE IF YOU WANT A JURY |
| 21 | TRIAL OR IF YOU WANT TO GIVE IT UP AND HAVE A JUDGE |
| 22 | SITTING WITHOUT A JURY TO DECIDE THE QUESTION OF YOUR |
| 23 | INNOCENCE OR YOUR GUILT. |
| 24 | DO YOU KNOW WHAT A JURY TRIAL IS? |
| 25 | THE DEFENDANT:  YES. |
| 26 | THE COURT:  DO YOU GIVE UP YOUR RIGHT TO A JURY |
| 27 | TRIAL AND AGREE THAT THE MATTER CAN BE TRIED BY A JUDGE |
| 28 | SITTING WITHOUT A JURY? |

4

1          THE DEFENDANT:  YES.

2          THE COURT:  COUNSEL, DO EACH OF YOU JOIN IN THE

3    WAIVER OF JURY TRIAL IN THIS CASE?

4          MS. DANTO:  I DO, YOUR HONOR.

5          MR. DICK:  I DO, YOUR HONOR, AS TO BOTH THE

6    CHARGES AND TO THE PRISON PRIOR.

7          THE COURT:  AND MR. BADUE, YOU UNDERSTAND THAT

8    YOUR WAIVER OF JURY TRIAL APPLIES TO THE CHARGES AND ALSO

9    TO THE PRISON PRIOR?

10          YOU'RE GOING TO ADMIT THE CHARGES, CORRECT?

11          THE DEFENDANT:  YOU'RE GOING TO LISTEN TO ALL THE

12    EVIDENCE, CORRECT?

13          THE COURT:  THAT'S WHAT THAT MEANS.

14          THE DEFENDANT:  THE PRISON PRIOR, TOO?

15          THE COURT:  YES.

16          THE DEFENDANT:  FINE.

17          THE COURT:  AND DO YOU WAIVE YOUR RIGHT TO A JURY

18    TRIAL?

19          THE DEFENDANT:  YES.

20          THE COURT:  I WILL ACCEPT THE WAIVER OF JURY

21    TRIAL.

22          MS. DANTO:  MY UNDERSTANDING IS, THE DISTRICT

23    ATTORNEY IS GOING TO BE PREPARED TO PRESENT HIS WITNESSES

24    ON WEDNESDAY MORNING, THE 5TH.

25          MR. DICK:  IF THAT'S OKAY WITH THE COURT AND

26    COUNSEL?

27          THE COURT:  THAT'S FINE WITH THE COURT.

28          MR. DICK:  9:00 O'CLOCK ON WEDNESDAY?

5

1      THE COURT:   9:00 O'CLOCK WEDNESDAY MORNING.

2      MR. DICK:   I WILL HAVE THE WITNESSES AT THAT TIME.

3      THE COURT:   OKAY.

4      (WHEREUPON, THE PROCEEDINGS WERE CONTINUED TO

5   WEDNESDAY, FEBRUARY 3, 2003, AT 9:00 A.M.)

6                    ---oOo---

6

```
 1   STATE OF CALIFORNIA      )
                              )    SS.
 2   COUNTY OF SANTA CLARA    )

 3

 4

 5

 6              I, PATRICIA NORRIS, DO HEREBY CERTIFY THAT:

 7              I AM AN OFFICIAL SHORTHAND REPORTER OF THE
     SUPERIOR COURT OF THE STATE OF CALIFORNIA, IN AND FOR THE
 8   COUNTY OF SANTA CLARA, AND THAT AS SUCH I REPORTED IN
     STENOTYPE THE PROCEEDINGS HAD IN THE WITHIN-ENTITLED
 9   MATTER AT THE TIME AND PLACE THEREIN SET FORTH; AND THAT
     THE SAME IS A FULL, TRUE AND CORRECT TRANSCRIPTION OF
10   SAID STENOTYPE AS REPORTED BY ME TO THE BEST OF MY
     ABILITY.

11

12              I FURTHER CERTIFY THAT I HAVE COMPLIED WITH
     CCP 237(A)(2) IN THAT ALL PERSONAL JUROR IDENTIFYING
13   INFORMATION HAS BEEN REDACTED, IF APPLICABLE.

14   DATED:

15

16

17

18                                _____
                                  PATRICIA NORRIS, CSR NO. 8475
19

20

21

22   ATTENTION:

23        CALIFORNIA GOVERNMENT CODE
          SECTION 69954(D) STATES:
24
          "ANY COURT, PARTY, OR PERSON WHO HAS PURCHASED A
25   TRANSCRIPT MAY, WITHOUT PAYING A FURTHER FEE TO THE
     REPORTER, REPRODUCE A COPY OR PORTION THEREOF AS AN
26   EXHIBIT PURSUANT TO COURT ORDER OR RULE, OR FOR INTERNAL
     USE, BUT SHALL NOT OTHERWISE PROVIDE OR SELL A COPY OR
27   COPIES TO ANY OTHER PARTY OR PERSON."

28
```

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SIXTH APPELLATE DISTRICT

---oOo---

THE PEOPLE OF THE STATE OF
CALIFORNIA,                    )
                               )
          PLAINTIFF-RESPONDENT, )
                               )
               VS.             )    CASE NO. CC241061
                               )
STEVE BADUE,                   )
                               )
          DEFENDANT-APPELLANT. )
_____)

COPY

---oOo---

REPORTER'S TRANSCRIPT ON APPEAL

FROM THE JUDGMENT OF THE SUPERIOR COURT

OF THE STATE OF CALIFORNIA, IN AND FOR

THE COUNTY OF SANTA CLARA

BEFORE THE HONORABLE RISE JONES PICHON, JUDGE

---oOo---    *In limine motions*

PROCEEDINGS HELD ON FEBRUARY 3, 2003

VOLUME ONE

PAGES 1 THROUGH 42

APPEARANCES:

FOR PLAINTIFF-RESPONDENT:    OFFICE OF THE ATTORNEY GENERAL
                             BY:  DAN LUNGREN, ATTORNEY
                             GENERAL OF THE STATE OF
                             CALIFORNIA

FOR DEFENDANT-APPELLANT:     IN PROPRIA PERSONA

1    IN THE SUPERIOR COURT OF THE STATE OF CALIFORNIA

2    SANTA CLARA COUNTY JUDICIAL DISTRICT

3    HALL OF JUSTICE FACILITY

4    BEFORE THE HONORABLE RISE JONES PICHON, JUDGE

5    DEPARTMENT NO. 36

6    ---OOO---

7    THE PEOPLE OF THE STATE   ) CASE NO. CC241061
    OF CALIFORNIA,          )

8                    )
          PLAINTIFF,    )

9                    )
    VS.                 )

10                    )
    STEVE BADUE,        )

11                    )
          DEFENDANT.    )

COPY

12

13

14

15    REPORTER'S TRANSCRIPT

16    OF

17    COURT TRIAL

18    FEBRUARY 3, 2003

19    VOLUME I

20    PAGES 2 THROUGH 42

21

22    A P P E A R A N C E S:

23    FOR THE PEOPLE:      STEVEN DICK,
                        DEPUTY DISTRICT ATTORNEY

24

25    FOR THE DEFENDANT:    RANDY DANTO,
                        DEPUTY PUBLIC DEFENDER

26    COURT REPORTER:      PATRICIA NORRIS,
                        C.S.R. 8475

27                        (408) 882-2953

28

3

1    SAN JOSE, CALIFORNIA                    FEBRUARY 3, 2003

2                    P R O C E E D I N G S

3         THE COURT:  THIS IS THE MATTER OF THE PEOPLE OF

4    THE STATE OF CALIFORNIA VERSUS STEVE KENT BADUE.

5         THE DEFENDANT:  I HAVE NO MIDDLE NAME.

6         THE COURT:  SO IT'S STEVE BADUE?

7         THE DEFENDANT:  YES.

8         THE COURT:  MAY I HAVE YOUR APPEARANCES.

9         MR. DICK:  STEVEN DICK FOR THE PEOPLE.

10        MS. DANTO:  RANDY DANTO ON BEHALF OF MR. BADUE,

11   WHO IS PRESENT IN CUSTODY.

12        CAN I REQUEST THAT HE BE UNCUFFED, YOUR HONOR?

13        THE COURT:  YES.

14        THIS IS THE TIME FOR MOTIONS IN LIMINE.

15        MR. DICK, WOULD YOU BEGIN WITH YOUR MOTIONS.

16        MR. DICK:  JUST ONE MOMENT, PLEASE?

17        THE COURT:  YES.

18        (WHEREUPON, PAUSE IN THE PROCEEDINGS.)

19        MR. DICK:  YOUR HONOR, I SUBMITTED A TRIAL BRIEF

20   WHICH INCLUDES MY MOTIONS IN LIMINE.

21        THE FIRST MOTION IS THAT IF THE DEFENDANT CHOOSES

22   TO TESTIFY, THAT HE CAN BE IMPEACHED WITH HIS PRIOR

23   CONVICTIONS, SPECIFICALLY HIS CONVICTION FOR PENAL CODE

24   SECTION 314, INDECENT EXPOSURE.

25        IN THE CASE OF PEOPLE V. BALLARD IT INDICATES THAT

26   IT'S A CRIME OF MORAL TURPITUDE.

27        THE COURT:  MISS DANTO?

28        MS. DANTO:  YOUR HONOR, I'M NOT FAMILIAR WITH THAT

4

1 CASE.

2       I'M A LITTLE SURPRISED THAT A MISDEMEANOR,

3 INDECENT EXPOSURE, QUALIFIES AS A CRIME OF MORAL

4 TURPITUDE, BUT I WOULD DEFER TO THE DISTRICT ATTORNEY.

5 I'M ASSUMING, AS AN OFFICER OF THE COURT, THAT HE'S

6 CORRECT.

7       MR. DICK:  HE ALSO HAS A FELONY CONVICTION FOR

8 INDECENT EXPOSURE OUT OF STOCKTON, THAT CONVICTION TOOK

9 PLACE ON -- I BELIEVE IT'S 1999 -- MARCH 19TH, 1998.  HE

10 ALSO HAS TWO MISDEMEANOR CONVICTIONS FOR INDECENT

11 EXPOSURE.

12       I HAVE NOT READ PEOPLE V. BALLARD.  I SIMPLY TOOK

13 THAT CASE FROM A LIST.  I CAN'T REPRESENT THAT I READ THE

14 CASE, I HAVE NOT, I SIMPLY TOOK IT OFF THE LIST.

15       THE COURT:  WE CAN CERTAINLY BE SURE.  I CAN PULL

16 IT RIGHT NOW AND LOOK AT IT.

17       MR. DICK:  ACTUALLY, IF WE WANT TO DO THAT, WE CAN

18 READDRESS THAT TOMORROW.  I CAN GO BACK AND TAKE A LOOK

19 AT IT TONIGHT.

20       THE COURT:  WE WILL PASS THAT UNTIL TOMORROW

21 MORNING.

22       MR. DICK:  THE DEFENDANT WAS CONVICTED OF 148.9

23 OUT OF SAN JOAQUIN COUNTY, THAT TOOK PLACE MARCH OF 2002.

24 I HAVE PROVIDED COUNSEL THE COPY OF THE CONVICTION AND

25 THE POLICE REPORTS THAT GO ALONG WITH THAT.  THE

26 DEFENDANT GAVE A FALSE NAME TO AN OFFICER OF THE STOCKTON

27 POLICE DEPARTMENT.

28       I'D BE ASKING THAT BE INTRODUCED FOR TWO REASONS:

5

1   ONE IS THAT THAT IS A CRIME THAT GOES TOWARDS BEING

2   DISHONEST, THAT IS, GIVING A FALSE NAME TO A POLICE

3   OFFICER; SECOND, IT IS MORE INDICIA AND CIRCUMSTANTIAL

4   EVIDENCE OF THE DEFENDANT'S WILLFUL FAILURE TO REGISTER

5   BECAUSE HE IS AVOIDING LAW ENFORCEMENT BECAUSE HE IS

6   ABSCONDING FROM PAROLE.

7        THE COURT:  MISS DANTO?

8        MS. DANTO:  WELL, YOUR HONOR, THE DATE I HAVE A

9   CONVICTION FOR THE MISDEMEANOR 148 IS SUBSEQUENT TO THE

10  DATE OF OFFENSE IN THIS PARTICULAR INFORMATION, SO IT

11  WOULD BE SUBSEQUENT CONDUCT, NOT CONDUCT THAT HAD EXISTED

12  AT THE TIME THAT THE OFFENSE WAS COMMITTED.

13       I'M NOT AWARE THAT A MISDEMEANOR 148 IS A CRIME OF

14  MORAL TURPITUDE THAT JUSTIFIES IMPEACHMENT IF HE

15  TESTIFIES.  FOR WHETHER OR NOT THAT PARTICULAR OFFENSE IS

16  ADMISSIBLE AS CIRCUMSTANTIAL EVIDENCE OF MY CLIENT'S

17  WILLFULNESS, I DISAGREE WITH THAT.

18       THE COURT:  ALL RIGHT.

19       MR. DICK, IT CERTAINLY CAN BE USED FOR

20  CREDIBILITY, BUT AS FAR AS ANY INDICATION OF WILLFULNESS,

21  IT CAN'T BE USED.

22       MR. DICK:  WELL, YOUR HONOR --

23       THE COURT:  IF THE DATE OF THE OFFENSE FOR THE 148

24  IS AFTER THE DATE OF THE OFFENSE FOR THIS 290, THEN IT

25  CAN'T BE USED TO SHOW WILLFULNESS.

26       MR. DICK:  ACTUALLY, YOUR HONOR, 290 HAS BEEN

27  DEEMED A CONTINUOUS OFFENSE BY THE COURTS, SO THE DATE

28  THAT'S IN THE COMPLAINT -- OR INFORMATION IS NOT THE LAST

6

1  DATE OF THE OFFENSE.  THE COURTS HAVE HELD THAT A 290 IS

2  A CONTINUOUS CRIME.  SO, IN OTHER WORDS, IF YOU MISS YOUR

3  ANNUAL BIRTH DATE, IT BECOMES A CONTINUOUS VIOLATION

4  UNTIL THE DATE OF THE ARREST.

5       THE REASON HE GIVES A FALSE NAME ON THE DATE OF

6  HIS ARREST IS BECAUSE HE'S TRYING TO AVOID HIS PAROLE

7  REVOCATION, WHICH TOOK PLACE IN OCTOBER, SO THE EVIDENCE

8  GOES TO SHOW THAT THE REASON WHY HE'S NOT -- WELL, I HAVE

9  TO EXPLAIN TO THE JURY, THAT THE DEFENDANT WILLFULLY

10  FAILED TO REGISTER.

11       WELL, WHY DO WE KNOW HE WILLFULLY FAILED TO

12  REGISTER, HE FAILED TO REGISTER BECAUSE HE ABSCONDED FROM

13  PAROLE, HE WAS AVOIDING LAW ENFORCEMENT.

14       WELL, WHEN HE'S CAUGHT BY LAW ENFORCEMENT, HE

15  GIVES A FALSE NAME SO THEY DON'T KNOW WHO HE IS.

16       SO THE 290 --

17       THE COURT:  WAIT A MINUTE.  I MUST HAVE

18  MISUNDERSTOOD WHAT MISS DANTO SAID.  I THOUGHT SHE WAS

19  SAYING THAT THE ARREST FOR THIS 290 TOOK PLACE AFTER THE

20  ARREST FOR PENAL CODE SECTION 148.9.

21       MR. DICK:  NO.

22       WHAT HAPPENS IS THAT HE FAILS TO REGISTER ON HIS

23  BIRTH DATE, THERE'S ALREADY A PAROLE WARRANT OUT FOR HIM,

24  THIS THEN BECOMES A WARRANT OUT FOR A 290 CASE, THE

25  WARRANT GETS SERVED ON THE 290 IN STOCKTON WHEN HE'S

26  ARRESTED ON THE 148.9.

27       THE COURT:  OKAY.

28       MR. DICK:  THEY GO OUT AND THEY FIND HIM, AND

1  DON'T HOLD ME TO THESE FACTS, BUT I BELIEVE THEY WERE

2  CONCERNED ABOUT 647(F).

3          THE COURT:  ALL RIGHT.  I MISUNDERSTOOD.

4          THE DEFENDANT:  EXCUSE ME, I HAVE A QUESTION,

5  PLEASE?  YOU MEAN THE FELONY WARRANT FROM SAN JOSE WAS

6  SERVED THE NIGHT I WAS ARRESTED IN STOCKTON?  YES OR NO,

7  PLEASE?

8          THE COURT:  ALL RIGHT.  JUST A MINUTE.

9          THE DEFENDANT:  THANK YOU.

10          THE COURT:  MR. BADUE, YOU CAN'T SPEAK OUT LIKE

11  THAT.

12          THE DEFENDANT:  MA'AM, I HAVE SOMETHING ELSE I'D

13  LIKE TO SAY.

14          THE COURT:  YOU'RE WELCOME TO ASK A QUESTION IF

15  YOU NEED TO, BUT YOU HAVE TO ASK PERMISSION FIRST.

16          THE DEFENDANT:  MA'AM, I HAVE A MOTION THAT I NEED

17  TO FILE.  IT'S A MOTION --

18          THE COURT:  MR. BADUE, I'M GOING TO STOP YOU NOW,

19  IT'S NOT YOUR TURN, SOMEONE ELSE WAS SPEAKING.

20          THE DEFENDANT:  OKAY.  LET ME KNOW WHEN IT'S MY

21  TURN.

22          THE COURT:  I WILL DO THAT.

23          MR. DICK:  YOUR HONOR, THE NEXT MOTION THAT I

24  HAVE, MY UNDERSTANDING IS THAT ONE OF THE ARGUMENTS THAT

25  THE DEFENDANT WISHES TO TALK TO THE COURT ABOUT IS

26  WHETHER OR NOT HIS CASE IS BARRED BY DOUBLE JEOPARDY OR

27  IF IT'S BARRED BY COLLATERAL ESTOPPEL.

28          DOUBLE JEOPARDY OCCURS WHEN A PERSON HAS BEEN

1  CONVICTED OF, OR CHARGED OF A CRIME AND THAT GOES THROUGH

2  JURY TRIAL, AND HE IS NOT -- HE WASN'T CHARGED WITH THE

3  290 FAILURE TO REGISTER AS A SEX OFFENDER IN STOCKTON OUT

4  OF SAN JOAQUIN COUNTY.

5       THE REASON HE WAS NOT CHARGED WITH A 290 OUT OF

6  SAN JOAQUIN COUNTY IS BECAUSE THEY DID NOT HAVE

7  JURISDICTION TO HANDLE THAT CASE.  WHAT HAPPENED WAS THAT

8  HE WAS ARRESTED ON THE WARRANT OUT OF THE COUNTY, HE GAVE

9  A FALSE NAME, THEY CHARGED HIM WITH GIVING A FALSE NAME

10 TO A POLICE OFFICER, AND THAT'S WHAT HE WAS CONVICTED OF.

11 THEY DID NOT ACCUSE HIM OF VIOLATING THE SEX REGISTRATION

12 LAWS BECAUSE THE JURISDICTION FOR THAT WOULD HAVE BEEN

13 SANTA CLARA COUNTY, AND THERE'S TWO REASONS:  ONE IS,

14 THAT'S WHERE HE LAST REGISTERED; AND TWO, IT'S WHERE HE

15 GOT RELEASED ON PAROLE.

16      THE SECOND ARGUMENT, I BELIEVE, IS THAT HE

17 MAY HAVE BEEN ON PROBATION OUT OF STOCKTON, OUT OF

18 SAN JOAQUIN COUNTY, AND THEY USED THE FAILURE TO REGISTER

19 AS ONE OF THE REASONS TO VIOLATE HIS PROBATION.  I

20 PERSONALLY HAVE NOT BEEN ABLE TO VERIFY THAT.  I WAS TOLD

21 THAT BY DEFENSE COUNSEL, AND I ASSUME THAT THAT IS WHAT,

22 IN FACT, TOOK PLACE.

23      THE U.S. SUPREME COURT, THE CALIFORNIA SUPREME

24 COURT, AND THE APPELLATE COURTS IN CALIFORNIA, AND I

25 CITED ALL OF THOSE IN MY MOTIONS, HAVE ALL RULED ON THIS

26 ISSUE.  YOUR HONOR, THEY HAVE ALL HAD THE SAME EXACT

27 RULING, THAT A VIOLATION OF PROBATION IN A NEW CRIMINAL

28 OFFENSE IS NOT BARRED BY COLLATERAL ESTOPPEL.  IT

9

1   WOULDN'T BE DOUBLE JEOPARDY BECAUSE THERE'S NOT A JURY

2   TRIAL ON THE VIOLATION OF PROBATION.

3          IN OTHER WORDS, ON THE VIOLATION OF PROBATION YOU

4   HAVE THE ISSUE HE DIDN'T REGISTER, AND THEN YOU HAVE A

5   NEW CASE, ALL THE COURTS, UNITED STATES SUPREME COURT,

6   CALIFORNIA SUPREME COURT AND APPELLATE COURTS IN

7   CALIFORNIA HAVE ALL UNIVERSALLY HELD THAT A NEW CRIMINAL

8   CHARGE IS NOT BARRED BY COLLATERAL ESTOPPEL.

9          THE COURT:  BECAUSE THAT PARTICULAR CHARGE WAS

10  INCLUDED IN THE VIOLATION OF PROBATION?

11         MR. DICK:  RIGHT.  EXACTLY.

12         AND JOHNSON V. UNITED STATES, WHICH IS THE U.S.

13  SUPREME COURT CASE OUT OF 2000, LUCIDO V. SUPERIOR COURT,

14  WHICH IS A U.S. SUPREME COURT CASE, AND

15  CHAMBLIN V. MUNICIPAL COURT, WHICH IS AN APPELLATE COURT

16  DECISION, AND PEOPLE V. CARTER, THEY BASICALLY HAD THE

17  SAME EXACT HOLDING, IT'S NOT BARRED BY COLLATERAL

18  ESTOPPEL, THE NEW CRIMINAL OFFENSE.

19         I WOULD ASK THE DEFENDANT BE BARRED FROM ARGUING

20  TO THE JURY THAT THIS CASE IS BARRED BY DOUBLE JEOPARDY

21  OR COLLATERAL ESTOPPEL.

22         THE COURT:  MISS DANTO?

23         MS. DANTO:  YOUR HONOR, MY CLIENT RAISED THAT

24  ISSUE WITH ME THE FIRST TIME THAT I MET HIM AND EVERY

25  TIME AFTER THAT THAT I'VE MET HIM, AND I HAVE

26  INVESTIGATED MYSELF, PERSONALLY, THE STOCKTON CASE TO

27  VERIFY WHETHER, IN FACT, HE HAD BEEN CONVICTED OR CHARGED

28  WITH THE FAILING TO REGISTER, AND I SATISFIED MYSELF,

1  BASED UPON SEEING, I THINK, THE DOCKET AS WELL AS HAVING

2  A CONVERSATION WITH THE CLERK IN STOCKTON THAT, IN FACT,

3  HE HAD NOT BEEN CHARGED WITH THE CRIME OF FAILING TO

4  REGISTER BUT WAS ONLY CHARGED WITH THE GIVING THE FALSE

5  NAME.

6          I HAD A CONVERSATION WITH HIS PAROLE OFFICER WHO

7  INDICATED TO ME THAT IT WAS A VIOLATION.  I'M UNCLEAR IF

8  IT WAS BASED ON PAROLE VIOLATION OR PROBATION VIOLATION,

9  BUT THE CIRCUMSTANCES SUBSTANTIATING THE VIOLATION

10 INCLUDED THE FAILING TO REGISTER, BUT I DO KNOW THAT THAT

11 IS NOT THE SAME AS HAVING BEEN CONVICTED OF THE FAILING

12 TO REGISTER.  SO I HAVE PERSONALLY SATISFIED MYSELF THAT

13 THERE IS NOT A LEGAL DEFENSE TO BE MADE, THAT PROSECUTION

14 IS NOT BARRED BY DOUBLE JEOPARDY, NOTWITHSTANDING THAT MY

15 CLIENT HAS CONSISTENTLY INSISTED THAT THAT DEFENSE HAS TO

16 BE RAISED, AND, IN FACT, HAS TODAY PRESENTED A

17 SUBSTANTIAL PACKAGE OF WRITTEN MATERIALS THAT HE WANTS

18 FILED WITH THE COURT BASING HIS OBJECTION ON THE DOUBLE

19 JEOPARDY ARGUMENT.

20          THE COURT:  ANYTHING ELSE BEFORE THE COURT RULES?

21          THE DEFENDANT:  YES, I HAVE SOMETHING TO SAY.

22          NOW, WHEN I WAS ARRESTED IN STOCKTON AND I WAS

23 CHARGED WITH MY VIOLATION OF PROBATION, ON THE

24 INFORMATION THE VIOLATION OF PROBATION WAS PLACED UNDER

25 PENAL CODE 314 SUBDIVISION (1), AND YOU HAVE THAT -- SHE

26 HAS MY -- PUBLIC DEFENDER HAS A COPY OF THAT, AND IN THE

27 INFORMATION ON THE PROBATION VIOLATION THE 314 CHARGE WAS

28 THERE, AND THE PENAL CODE 290 CHARGE AND THE PENAL CODE

1  1203.2 CHARGE, PROBATION VIOLATION CHARGE, WAS ALSO

2  THERE, AND I PLEADED NO CONTEST AND ACCEPTED 120 DAYS AS

3  RECOMMENDED IN THE PROBATION VIOLATION REPORT.  AND THAT

4  HAPPENED IN THE ARRAIGNMENT COURT.

5       AND THE SECOND CHARGE IS A TOTALLY DIFFERENT CASE

6  NUMBER ENTIRELY, IT'S TWO DIFFERENT CASES.  THE SECOND

7  CHARGE WAS AN ARREST FOR PENAL CODE 148.9, GIVING AN

8  OFFICER A FALSE NAME.  HE TOOK ME TO MY MOTHER'S HOUSE TO

9  VERIFY MY PROPER IDENTITY, THEN HE TOOK ME TO JAIL

10 BECAUSE I HAD A PROBATION WARRANT AND A PAROLE WARRANT.

11       NOW, I HAVE THE RIGHT UNDER THE UNITED STATES

12 FIFTH AMENDMENT TO PLEAD DOUBLE JEOPARDY.  AND MY

13 PLEADING DOUBLE JEOPARDY IS NOT SOMETHING THAT YOU CAN

14 BAR AS A PLEA TO HAVING ALREADY BEEN PROSECUTED,

15 SENTENCED, YOU CAN'T BAR THAT AS AN AMPLE DEFENSE TO ANY

16 DEFENDANT OR ANY PERSON.

17       NOW, THE INFORMATION I'VE BROUGHT IS WHAT I WANT

18 SUBMITTED TO THE COURT AS EVIDENCE ON MY BEHALF AND IN MY

19 DEFENSE BECAUSE --

20       THE COURT:  MR. BADUE --

21       THE DEFENDANT:  LET ME FINISH, BECAUSE AS FAR AS

22 MY HAVING TO REGISTER AS A PENAL CODE 290(G)(1)

23 REGISTRANT, NOT PENAL CODE 290(G)(2) REGISTRANT.

24       THE COURT OF ORIGINAL JURISDICTION IS IN SAN

25 JOAQUIN COUNTY, AND I HAVE THE INFORMATION TO A PLEA

26 BARGAIN THAT I MADE ON MARCH 19TH, 1998, FOR AN ARREST

27 THAT WAS MADE TO ME ON OCTOBER 30TH, 1997.

28       THE COURT:  OKAY.  DO YOU HAVE PROOF OF WHAT

12

1  YOU'RE SAYING?

2          THE DEFENDANT:  WAIT A MINUTE.  I HAVE A SUBPOENA

3  THAT I WISH TO ALSO FILE THAT REQUESTS --

4          THE COURT:  MR. BADUE --

5          THE DEFENDANT:  LET ME FINISH, THAT REQUESTS THE

6  INFORMATION FROM THE DIFFERENT AGENCIES LISTED, ONE, TWO,

7  AND THREE, THAT'S IN CONJUNCTION WITH MY MOTION TO ADMIT

8  JUDICIAL NOTICE AND DOUBLE JEOPARDY.

9          THE COURT:  ALL RIGHT.  SO YOU'RE SAYING AT THIS

10  TIME YOU DON'T HAVE ANY PROOF OF WHAT YOU'RE SAYING?

11          THE DEFENDANT:  I DO HAVE PROOF OF WHAT I'M

12  SAYING, BUT I TRIED TO WRITE TO THESE PEOPLE AND GET THE

13  RECORDS, BUT THEY WOULD NOT GET ME THE RECORDS.  AND THE

14  ONLY WAY I CAN GET THE RECORDS IS TO SUBPOENA THE

15  RECORDS.

16          I'M NOT CAPABLE OF REPRESENTING MYSELF, BUT I'M

17  NOT DUMB AS FAR AS THE LAW GOES IN TERMS OF SIMPLE

18  REGISTRATION UNDER PENAL CODE SECTION 290(G)(1).

19          THE COURT:  OKAY.

20          THE DEFENDANT:  YOU KNOW, IT'S NON-VIOLENT

21  REGISTRATION, YOU KNOW, ENTIRELY.  AND I'VE READ THE

22  ENTIRE PENAL CODE 290, YOU KNOW.

23          THE COURT:  MISS DANTO, HAVE YOU HAD THE

24  OPPORTUNITY TO REVIEW THE PRIOR RECORDS FOR MR. BADUE?

25          MS. DANTO:  YES.

26          THE COURT:  DID YOU SEE ANYTHING IN THE RECORDS

27  THAT WOULD SHOW THAT THERE WAS A SEPARATE CONVICTION FOR

28  THIS 290 AND THE 148 IN THIS CASE?

13

1    MS. DANTO:  NO, THAT WAS WHAT I CHECKED IN

2    STOCKTON.

3    MR. DICK:  YOUR HONOR, I BELIEVE -- ACTUALLY, I

4    HAVE A COPY OF A CERTIFIED PRIOR.

5    I BELIEVE WHAT MR. BADUE IS SAYING IS THAT HE'S

6    NOT SAYING THAT THERE WAS A BRAND NEW CASE FOR 290, WHAT

7    HE'S SAYING IS THAT HE HAD A VIOLATION OF PROBATION IN

8    STOCKTON AND THEY USED 290 TO VIOLATE HIS PROBATION.

9    THE DEFENDANT:  CORRECT, THAT'S EXACTLY WHAT I

10   SAID, AND THEY RESTATED THE ORIGINAL CHARGE OF PENAL CODE

11   314 SUBDIVISION (1), A FELONY -- FELONY, INDECENT

12   EXPOSURE IN A PUBLIC PLACE IN STOCKTON, CALIFORNIA.

13   THE COURT:  MR. BADUE, I'M GOING TO LET YOU FINISH

14   WHAT YOU HAVE TO SAY NOW, BUT AFTER THAT I'M GOING TO

15   LOOK TO YOUR ATTORNEY TO TALK.

16   THE DEFENDANT:  YES, MA'AM.

17   THE COURT:  NOW, DO YOU AGREE WITH WHAT MR. DICK

18   HAS SAID JUST NOW THAT THE 290 WAS MENTIONED AS PART OF

19   YOUR PROBATION VIOLATION?

20   THE DEFENDANT:  YES.  YES, IT WAS STATED IN THE

21   INFORMATION AS ALSO GROUNDS TO VIOLATE MY PROBATION.

22   THE COURT:  OKAY.  I'M NOT GOING TO AGREE TO YOU

23   THAT IT WAS CALLED AN INFORMATION, OKAY.

24   THE DEFENDANT:  PROBATION VIOLATION REPORT, THAT'S

25   IN HERE, TOO.

26   THE COURT:  NOW, IF THE LAW SAYS -- AND I HAVE TO

27   FOLLOW THE LAW, RIGHT?

28   THE DEFENDANT:  YEAH.

14

1    THE COURT:  THAT DOES NOT MEAN THAT THERE IS A

2    SEPARATE CONVICTION FOR THE 290 OR THE 148; AND,

3    THEREFORE, THERE IS NO DOUBLE JEOPARDY AND THERE'S NO

4    COLLATERAL ESTOPPEL.

5         THE DEFENDANT:  LET ME SAY THIS IN RESPONSE --

6         THE COURT:  JUST A MINUTE.  WHAT DO YOU WANT ME TO

7    DO?

8         THE DEFENDANT:  LISTEN, MA'AM, I WAS GIVEN A COURT

9    PAPER FOR THE 148.9 WITH THE SEPARATE CASE NUMBER, AND I

10   WAS GIVEN A COURT PAPER FOR MY PROBATION VIOLATION ON THE

11   PENAL CODE 314 SUBDIVISION (1), ACCORDING TO THAT PAPER

12   THAT I WAS GIVEN ON MARCH 11TH, THAT MORNING, THAT SAYS

13   THAT THE D.A. IS COMMITTING DOUBLE JEOPARDY.

14        THE VIOLATION ON THE PROBATION -- MA'AM, THE

15   INFORMATION CONTAINED IN THE PROBATION VIOLATION REPORT

16   SAYS THAT --

17        THE COURT:  I HEAR WHAT YOU'RE SAYING.

18        THE DEFENDANT:  THANK YOU, MA'AM.

19        AND I HAVE THE RIGHT TO MY DEFENSE.

20        THE COURT:  JUST A MINUTE.  BUT THE 290 IS NOT A

21   PROBATION VIOLATION.

22        THE DEFENDANT:  THAT IS CORRECT.

23        THE COURT:  IT DOESN'T BAR THIS JURY TRIAL FROM

24   PROCEEDING.

25        THE DEFENDANT:  I UNDERSTAND WHAT YOU'RE

26   ATTEMPTING TO COMPEL ME TO BELIEVE IN TERMS OF WHAT HE'S

27   SAYING ABOUT A COLLATERAL ESTOPPEL.  NOW, THAT DOESN'T

28   BAR ME FROM ADMITTING THIS FILING AS MY DEFENSE.  THANK

15

1    YOU, MA'AM.

2          MR. DICK:  YOUR HONOR, JUST FOR THE RECORD, THE

3    DEFENDANT'S POSITION HAS BEEN RAISED, PEOPLE -- LAWYERS

4    HAVE ARGUED WHAT HE'S ARGUING BEFORE THE COURT, AND

5    PERHAPS READING FROM ONE OF THE CASES MAY HELP A BIT.

6    THE UNITED STATES SUPREME COURT, CALIFORNIA SUPREME

7    COURT, AND APPELLATE COURTS HAVE ALL HELD THAT DUE TO THE

8    PROCEDURAL NATURE OF VIOLATION OF PROBATIONS AND FOR

9    PUBLIC POLICY CONCERNS, DOUBLE JEOPARDY AND COLLATERAL

10   ESTOPPEL DO NOT BAR PROSECUTION OF NEW CRIMINAL OFFENSE

11   AFTER A PERSON HAS BEEN FOUND TO VIOLATE HIS OR HER

12   PROBATION BASED ON THE FACTS OF THE NEW CASE.

13         THE COURT:  DO YOU UNDERSTAND THAT, MR. BADUE?

14         THE DEFENDANT:  I UNDERSTAND WHAT YOU'RE TELLING

15   ME.

16         THE COURT:  HE WAS READING THE LAW TO YOU.

17         THE DEFENDANT:  MA'AM --

18         THE COURT:  JUST A MINUTE.

19         DO YOU UNDERSTAND THAT?

20         THE DEFENDANT:  I UNDERSTAND WHAT HE SAID.

21         THE COURT:  NO, DO YOU UNDERSTAND THAT IS WHAT THE

22   LAW IS?

23         THE DEFENDANT:  MA'AM, WHAT HE IS SAYING IS THAT I

24   CANNOT USE DOUBLE JEOPARDY AS AN AVID DEFENSE, I DO NOT

25   BELIEVE THAT, AND I DON'T CARE HOW MANY TIMES HE WANTS TO

26   READ THE CASE.  UNLESS I READ IT FOR MYSELF AND REALIZE

27   THE CIRCUMSTANCES OF THE CASE, I AM STILL GOING TO ADMIT

28   MY DOUBLE JEOPARDY, IF THAT'S MY ONLY DEFENSE I MAY HAVE.

16

.1      I HAVE THAT CONSTITUTIONAL RIGHT.

2           THE COURT:  ALL RIGHT.  BUT YOU DON'T.  AND YOU

3       CAN'T ASK ME TO DO SOMETHING THAT IS AGAINST THE LAW,

4       EVEN IF YOU DON'T BELIEVE THAT IT'S TRUE.

5           MR. DICK.

6           MR. DICK:  SO I WOULD ASK THE COURT AT THIS TIME

7       TO BAR THE DEFENDANT FROM ARGUING TO THE JURY THAT DOUBLE

8       JEOPARDY OR COLLATERAL ESTOPPEL BARS THIS, I'D ASK THE

9       COURT TO MAKE A FINDING THAT UNDER THE LAW, IT IS NOT

10      DOUBLE JEOPARDY OR COLLATERAL ESTOPPEL.

11          THE COURT:  THE MOTION IS GRANTED.

12          MR. DICK:  THE NEXT MOTION -- AND I APOLOGIZE.

13          (WHEREUPON, PAUSE IN THE PROCEEDINGS.)

14          THE COURT:  WHAT DOES HE WANT?

15          THE DEFENDANT:  A COPY OF THE CASE THAT HE'S

16      FILING BASED ON THE MOTION THAT YOU JUST GRANTED.

17          I HAVE THE RIGHT FOR APPEAL, DON'T I?

18          THE COURT:  IF YOU APPEAL FOLLOWING YOUR JURY

19      TRIAL ALL OF THESE DOCUMENTS WILL GO TO THE COURT OF

20      APPEAL, IS THAT WHAT YOU'RE ASKING?

21          THE DEFENDANT:  I'D LIKE TO READ THE CASE BECAUSE

22      I STILL WANT --

23          THE COURT:  I DON'T HAVE A PROBLEM WITH PROVIDING

24      YOU WITH A COPY OF THE CASE.

25          THE DEFENDANT:  THANK YOU.

26          OF WHAT THE MOTION WAS GRANTED.

27          THE COURT:  THAT MEANS FROM THIS MOMENT ON YOU

28      HAVE TO BE QUIET.

1          THE DEFENDANT:  OKAY, MA'AM.

2          THE COURT:  MR. DICK, IF YOU'LL GIVE ME THE CASE

3  CITATION.

4          MR. DICK:  YOUR HONOR, I ACTUALLY CAME TO COURT

5  WITH COPIES OF THE CASES THAT I'VE CITED, I ACTUALLY

6  HIGHLIGHTED THOSE CASES, I WOULD ASK THE COURT TO EITHER

7  MAKE COPIES OR ALLOW ME TIME TO MAKE COPIES.  I DID NOT

8  ANTICIPATE NEEDING TO MAKE EXTRA COPIES.

9          I APOLOGIZE, BUT I DO HAVE -- WELL, ACTUALLY, I

10  MAY HAVE -- IF I MAY HAVE A MOMENT, PLEASE?

11          (WHEREUPON, PAUSE IN THE PROCEEDINGS.).

12          MR. DICK:  I'M SORRY, I NOTICED I HAD SIX COPIES.

13          THE COURT:  IF YOU DON'T MIND MAKING COPIES, I'LL

14  CERTAINLY GIVE YOU TIME.

15          MR. DICK:  THAT'S FINE.

16          MAY I HAVE A MOMENT, YOUR HONOR?

17          THE COURT:  YES.

18          (WHEREUPON, PAUSE IN THE PROCEEDINGS.).

19          MR. DICK:  THE NEXT MOTION IN REGARDS TO JUDICIAL

20  NOTICE.  THE COURT IS ALLOWED TO TAKE JUDICIAL NOTICE OF

21  IT'S FILE PURSUANT TO EVIDENCE CODE 450, 451 AND 452.

22          I'LL BE ASKING THE COURT TO TAKE JUDICIAL NOTICE

23  THAT THE DEFENDANT HAS IDENTIFIED HIMSELF AS STEVE BADUE

24  AND THERE IS A DATE OF BIRTH OF JANUARY 4TH, 1966.

25          MS. DANTO:  I HAVE NO OBJECTION TO THAT.

26          THE COURT:  THE MOTION IS GRANTED.

27          MR. DICK:  MY NEXT MOTION IS THAT THE DEFENDANT

28  SHALL NOT BE ALLOWED TO ARGUE TO THE JURY THAT THE

18

1   CURRENT OFFENSE OF VIOLATING THE SEX REGISTRATION LAWS

2   SHOULD BE A MISDEMEANOR.

3        THE SECTION 290(G)(2), IT SORT OF WORKS TO THE

4   EXTENT THAT IF YOU HAVE A PRIOR 290, THE NEXT 290 IS A

5   FELONY, BUT ONCE YOU HAVE A FELONY 290, IT'S NOT

6   REDUCIBLE TO A MISDEMEANOR, IT IS NOT A WOBBLER.

7        IT'S EITHER A FELONY OR A MISDEMEANOR.  IF YOU GET

8   A MISDEMEANOR, THEN THE NEXT ONE'S A FELONY, AND YOU

9   CAN'T REDUCE IT TO A MISDEMEANOR, SO I'D ASK THE

10  DEFENDANT NOT BE ALLOWED TO ARGUE TO THE JURY THAT IT

11  SHOULD BE REDUCED TO A MISDEMEANOR.

12        THE DEFENDANT:  ON WHAT GROUNDS?

13        MS. DANTO:  YOUR HONOR, I KNOW WHAT THE LAW IS, I

14  HAVE EXPLAINED IT TO MY CLIENT THAT IF YOU'RE CONVICTED

15  OF A MISDEMEANOR 314, FAILING TO REGISTER, THE FIRST TIME

16  IT IS A MISDEMEANOR 290; HOWEVER, IF YOU SUBSEQUENTLY

17  FAIL TO REGISTER AGAIN, THEN IT BECOMES 290 WITH A PRIOR,

18  AND THAT IS A FELONY.  AND I HAVE EXPLAINED THAT TO MY

19  CLIENT.

20        THE DEFENDANT:  WHERE DOES IT SAY THAT IF YOU

21  FAILED TO REGISTER A SECOND TIME THAT THE CHARGE IS A

22  FELONY?

23        THE COURT:  MR. BADUE, THE STATUTE SAYS THAT.

24        THE DEFENDANT:  PENAL CODE 290?

25        THE COURT:  YES.

26        THE DEFENDANT:  WHERE, IN THE STATUTE?  PENAL CODE

27  290, ON WHAT PAGE DOES IT SAY THAT?

28        THE COURT:  MR. BADUE --

19

1          THE DEFENDANT:  YEAH.

2          THE COURT:  -- THERE ARE THREE OF US WHO WENT TO

3   LAW SCHOOL.

4          THE DEFENDANT:  YES.

5          THE COURT:  IF THE COURT MAKES A RULING, THEN YOU

6   ACCEPT IT.

7          THE DEFENDANT:  OKAY.

8          THE COURT:  NOW, YOU CAN ASK YOUR ATTORNEY LATER

9   ON WHERE THAT IS IN THE PENAL CODE, OKAY?

10         THE DEFENDANT:  PENAL CODE 290, REGISTRATION OF

11  SEX OFFENDERS.

12         THE COURT:  MR. BADUE --

13         THE DEFENDANT:  WHERE DOES IT SAY THAT?

14         THE COURT:  YOU CAN TAKE THE TIME TO READ THAT.

15         THE DEFENDANT:  I READ IT, MA'AM.

16    NOWHERE IN HERE DOES IT SAY A SECOND OFFENSE FOR

17  VIOLATION OF THIS CODE SECTION --

18         THE COURT:  JUST A MINUTE.

19         THE DEFENDANT:  -- MAY BE CHARGED AS A FELONY.

20         THE COURT:  MISS DANTO, CAN YOU FIND IT FOR ME.

21         MS. DANTO:  I DON'T KNOW IF HE'S GOT THE WHOLE

22  SECTION.

23         THE DEFENDANT:  I HAVE THE WHOLE SECTION.  YEAH,

24  THIS WHOLE SECTION, PLEASE FIND IT, I'D LIKE TO READ IT.

25         (WHEREUPON, PAUSE IN THE PROCEEDINGS.)

26         THE DEFENDANT:  THE REASON I SAY THAT,

27  YOUR HONOR -- MA'AM, THE REASON --

28         THE COURT:  MR. BADUE --

1      THE DEFENDANT:  I KNOW, WAIT UNTIL I SPEAK TO MY

2   ATTORNEY.

3      THE COURT:  YES.

4      THE DEFENDANT:  OKAY.

5      (WHEREUPON, PAUSE IN THE PROCEEDINGS.)

6      (WHEREUPON, DISCUSSION HELD BETWEEN ATTORNEY AND

7   DEFENDANT.)

8      THE DEFENDANT:  I WAS GIVEN THE FELONY CHARGE IN

9   SAN JOAQUIN COUNTY IN THE CITY OF STOCKTON, YOUR HONOR, I

10  PLEA BARGAINED FOR THE MISDEMEANOR REGISTRATION UNDER

11  PENAL CODE 290(G)(1), I DO NOT REGISTER UNDER PENAL CODE

12  290(B)(2), MA'AM, I AM NOT REQUIRED TO REGISTER UNDER

13  PENAL CODE SECTION 290(G)(2).

14      THE COURT:  MR. BADUE, YOU SAID --

15      THE DEFENDANT:  NOW, LET ME FINISH.

16      THE COURT:  NO.  NO.  NO.  NO.  NO.

17      THE DEFENDANT:  THE RECORD'S --

18      THE COURT:  WAIT JUST A MINUTE.

19      THE DEFENDANT:  YES.

20      THE COURT:  WHAT DID YOU ASK?

21      THE DEFENDANT:  TO SHOW ME.  SHE SHOWED ME PENAL

22  CODE 290(G)(2).

23      THE COURT:  YOU SAID THAT YOU WANTED TO KNOW WHERE

24  IT SAID IN THE STATUTE --

25      THE DEFENDANT:  WHERE IT SAYS THAT --

26      THE COURT:  JUST A MINUTE.  THAT AFTER HAVING A

27  FIRST CONVICTION WHERE THE NEXT CHARGE WOULD BE A FELONY.

28      THE DEFENDANT:  IT SAYS THAT IN PENAL CODE

1    290(G)(2).

2           THE COURT:  YOU SAID IT DIDN'T SAY THAT.

3           THE DEFENDANT:  MA'AM, I'M NOT -- I HEAR YOU.  I

4    UNDERSTAND.

5           THE COURT:  JUST A MINUTE.  SO YOU ACKNOWLEDGE

6    THAT IT'S THERE?

7           THE DEFENDANT:  I DO ACKNOWLEDGE THAT IT'S THERE,

8    BUT, MA'AM, I'M SAYING TO YOU I AM NOT A PENAL CODE

9    290(G)(2) REGISTRANT.

10          MR. DICK:  I UNDERSTAND THE CONFUSION.

11          YOUR HONOR, 290(G)(2) IS THE PUNISHMENT FOR

12   VIOLATING 290.  NO ONE IS A 290(G)(2) REGISTRANT, PER SE.

13   YOU HAVE TO REGISTER PURSUANT TO 290(A), AND THEN THEY

14   GIVE A WHOLE SERIES OF THINGS YOU HAVE TO REGISTER FOR.

15          WHAT (G)(2) SAYS, IF YOU'VE ALREADY BEEN REQUIRED

16   TO REGISTER BECAUSE -- IN THIS CASE, BECAUSE YOU VIOLATED

17   INDECENT EXPOSURE AND YOU ALSO HAVE BEEN CONVICTED ONCE

18   BEFORE FOR FAILING TO REGISTER, ONCE THOSE TWO THINGS

19   HAVE TAKEN PLACE, IF YOU VIOLATE YOUR REGISTRATION

20   REQUIREMENTS, IT'S THEN A FELONY, AND IT CAN NEVER BE A

21   MISDEMEANOR.

22          SO I THINK THAT'S WHERE THE CONFUSION IS, IS THAT

23   IN THE BEGINNING BEFORE HE SUFFERED THE 290 CONVICTION,

24   THE PUNISHMENT WOULD BE UNDER 290(G)(1), BUT BECAUSE THE

25   DEFENDANT HAS SUFFERED A PRIOR CONVICTION, THE PUNISHMENT

26   IS ONLY UNDER 290(G)(2), WHICH IS ONLY A FELONY.

27          THE DEFENDANT:  MA'AM, THAT DOESN'T MAKE --

28          THE COURT:  HOLD ON.  HOLD ON.

22

1      THE DEFENDANT:  OKAY.

2      THE COURT:  YOU KNOW, YOU DIDN'T APPEAR TO BE

3   LISTENING.

4      THE DEFENDANT:  I HEARD WHAT HE SAID TO YOU.

5      THE COURT:  WHAT DID HE SAY?

6      THE DEFENDANT:  MA'AM, HE'S TELLING ME THAT WHEN I

7   WENT TO SUPERIOR COURT DOWNTOWN ON FIRST STREET, AND

8   THINKING -- I THINK IT WAS IN 1998, THE JUDGE GAVE ME A

9   PLEA BARGAIN UNDER PENAL CODE SECTION 290, I ACCEPTED IT

10  BECAUSE IT WAS ONLY A 90-DAY SENTENCE, AND HE'S TELLING

11  ME THAT HE'S USING THAT FELONY IN THIS CASE, IN THIS

12  COUNTY, FROM A PLEA BARGAIN THAT I MADE IN A DIFFERENT

13  CIRCUMSTANCE FOR MISDEMEANOR REGISTRATION FOR THE

14  DURATION OF PROBATION IN ORDER TO CHARGE ME AS A FELONY

15  SEX OFFENDER.

16      THE COURT:  JUST A MINUTE.

17      THE DEFENDANT:  THAT IS GARBAGE.

18      THE COURT:  IS THAT ACCURATE?

19      MR. DICK:  IT IS.

20      THE DEFENDANT:  THAT'S WHAT YOU'RE SAYING, AND

21  THAT'S GARBAGE.

22      THE COURT:  MR. BADUE, DON'T DO THAT AGAIN.

23      THE DEFENDANT:  YES, MA'AM.

24      MR. DICK:  THE 290 PREVIOUS CONVICTION ACTUALLY

25  WAS NOT IN ANOTHER JURISDICTION, IT ACTUALLY WAS IN

26  SANTA CLARA COUNTY.

27      THE DEFENDANT:  THAT'S WHAT I SAID, IT'S IN

28  DOWNTOWN.

1    MR. DICK:  SO WHAT HAPPENS IS -- AND I CAN

2  CERTAINLY UNDERSTAND MR. BADUE'S FRUSTRATION --

3    THE DEFENDANT:  I'M NOT. --

4    THE COURT:  MR. BADUE --

5    THE DEFENDANT:  OKAY, NO.

6    MR. DICK:  WHAT THE LAW SAYS IS THAT ONCE YOU HAVE

7  A CONVICTION FOR 290, ANY SUBSEQUENT CONVICTION IS A

8  FELONY, PERIOD.

9    SO THAT'S THE STATE OF THE LAW, THAT'S WHAT THE

10  LEGISLATURE SAYS THE LAW IS, WHETHER IT'S GARBAGE OR NOT

11  GARBAGE, THAT IS THE STATE OF THE LAW.

12    THE DEFENDANT:  WHERE DOES THE LAW SAY --

13    THE COURT:  MR. BADUE --

14    THE DEFENDANT:  LET ME FINISH.  AND NOT UNDER

15  PENAL CODE (G)(2) DOES IT SAY IF I'M (G)(1) REGISTRATION

16  BECAUSE I COULD BE (G)(7), THAT IF I'M (G)(1) REGISTRANT

17  WHERE IT SAYS, IF I VIOLATE PENAL CODE 290 AGAIN, I'M

18  SUBJECTED TO BE CHARGED AS A FELON.

19    IT'S BECAUSE UNDER PENAL CODE 290(G)(2), IT MEANS

20  IT IS TAKING INTO CONSIDERATION THAT I'M A VIOLENT SEX

21  OFFENDER, I'M NOT A RAPIST AND I'M NOT INDECENT EXPOSURE,

22  YOU'RE TALKING ABOUT CONVICTIONS BASED ON PLEA BARGAINS.

23    THE COURT:  OKAY, MR. BADUE.

24    THE DEFENDANT:  THANK YOU.

25    THE COURT:  ANY MORE MOTIONS IN LIMINE?

26    MR. DICK:  NOTHING FURTHER, YOUR HONOR.  NO,

27  YOUR HONOR.

28    I WOULD ASK AT THIS TIME THE DEFENDANT NOT BE

24

1    ALLOWED TO ARGUE THAT IT SHOULDN'T BE ALLOWED THAT THESE

2    SHOULD BE REDUCED TO A MISDEMEANOR.

3         THE COURT:  THE MOTION IS GRANTED.

4         NOT RIGHT NOW, MR. BADUE.

5         MR. DICK:  THERE, YOU CAN HAVE A COPY OF THAT.

6         THE DEFENDANT:  I ALSO HAVE A COPY OF THAT.

7         THE COURT:  NOT RIGHT NOW.  THAT MEANS DON'T SPEAK

8    AT ALL.

9         THE DEFENDANT:  OKAY, MA'AM.

10        MR. DICK:  YOUR HONOR, THERE CURRENTLY IS NO

11   CALJIC FOR VIOLATION OF 290.

12        I HAVE PROVIDED TO THE COURT AND COUNSEL A

13   PROPOSED FOUR-PRONG TEST, THE DEFENSE HAS A MOTION

14   REGARDING PREVIOUS CONVICTIONS THAT WE'LL NEED TO DISCUSS

15   TO DETERMINE -- AND YOU MIGHT WANT TO DO THAT TOMORROW

16   INSTEAD OF TONIGHT REGARDING THE PRIOR 314'S AND 290'S,

17   IT ALTERS THE JURY INSTRUCTIONS.

18        I'M GOING TO ASK THE COURT TO MAKE A FINDING AND

19   JUDICIAL NOTICE THAT WITH A 314 CONVICTION, THE DEFENDANT

20   IS A LIFE-LONG REGISTRANT, THAT IS NOT AN ISSUE, THAT'S

21   SUPPOSED TO GO TO THE JURY.  IT IS AN ISSUE, ACTUALLY,

22   THE COURT CAN TAKE JUDICIAL NOTICE OF THE STATE OF THE

23   LAW.  I'M GOING TO ASK THE COURT TO MAKE THAT JUDICIAL

24   FINDING.

25        AND ON THE LAST PAGE IS THAT PART OF THE

26   INSTRUCTION WHERE IT BASICALLY SUGGESTS TO THE JURY,

27   AND -- IT'S GOING TO HAVE TO BE REFINED ANYWAY IF IT'S

28   GOING TO BE GIVEN.  I WILL BE ASKING THE COURT TO MAKE

1   THAT FINDING.  THAT IS NOT AN ISSUE FOR THE JURY.  THAT'S

2   ACTUALLY AN ISSUE FOR THE COURT TO MAKE THAT FINDING,

3   THAT'S THE INSTRUCTION THAT THE COURT GIVES, THERE'S

4   JUDICIAL NOTICE UNDER 451, EVIDENCE CODE 451.  I DON'T

5   HAVE A MOTION ON THAT, THAT'S THE INSTRUCTION THAT I

6   PROPOSED.

7        THE COURT:  WE WILL TAKE UP THE JURY INSTRUCTIONS

8   CLOSER TO THE END.

9        DO YOU HAVE ANY FURTHER MOTIONS IN LIMINE?

10       MR. DICK:  I DO NOT, YOUR HONOR.

11       THANK YOU.

12       THE COURT:  MISS DANTO?

13       MS. DANTO:  YOUR HONOR, I HAD INTENDED TO REQUEST

14  THAT MY CLIENT BE PERMITTED TO ADMIT THAT HE HAD

15  PREVIOUSLY BEEN CONVICTED OF THE PRIOR 290 THEREBY

16  ELIMINATING THE D.A.'S OPPORTUNITY TO INTRODUCE THAT INTO

17  EVIDENCE, KIND OF LIKE A 666, AND THAT IS BASED ON MY

18  ASSUMPTION THAT MY CLIENT IS GOING TO BE WILLING TO ADMIT

19  THAT HE HAD PREVIOUSLY BEEN CONVICTED OF A 290.

20       THE DEFENDANT:  IN OTHER WORDS, IF I AGREE TO

21  THAT, I GET TO MAKE MY MOTION BASED ON DOUBLE JEOPARDY?

22       THE COURT:  NO, IT JUST MEANS THAT THE JURY WON'T

23  HEAR ABOUT YOUR PRIOR CONVICTION FOR PENAL CODE SECTION

24  290.

25       THE DEFENDANT:  THEN THAT MEANS THAT I'M BEING

26  CONSIDERED AS A SEXUALLY VIOLENT PREDATOR.  WHY WOULD --

27  I DO NOT WANT THEM TO REALIZE THAT I'M BEING CHARGED AS A

28  SECOND OFFENSE AND THAT IT'S BEING STATED AS A FELONY

1    UNDER PENAL CODE 290(G)(2).

2         HOW DOES THAT HELP ME, YOUR HONOR?

3         THE COURT:  BECAUSE IF THEY KNOW THAT YOU HAVE THE

4    PRIOR CONVICTION, THEY MAY USE THAT TO SAY THAT YOU MOST

5    LIKELY ARE GUILTY OF A NEW ONE BECAUSE YOU DID IT BEFORE.

6         THE DEFENDANT:  IT'S SIMPLY BASED ON INDECENT

7    EXPOSURE.

8         THE COURT:  NO, IT'S BASED ON CONVICTION OF PENAL

9    CODE 290.

10        SOMETIMES WHEN PEOPLE HEAR THAT YOU'VE DONE IT

11   BEFORE, THEY FEEL LIKE YOU PROBABLY DID IT THIS TIME,

12   YOUR ATTORNEY'S TRYING TO KEEP THEM FROM HEARING THAT IT

13   HAPPENED BEFORE SO THAT THEY WON'T BE CONFUSED AND USE

14   THAT TO SAY YOU DID IT THIS TIME.

15        THE DEFENDANT:  SO SHE'S ASKING ME TO AGREE TO

16   WHAT?

17        THE COURT:  TO ADMIT THAT YOU HAVE THE PRIOR

18   CONVICTION FOR FAILING TO REGISTER SO IT DOESN'T HAVE TO

19   COME UP IN THIS TRIAL.

20        THE DEFENDANT:  NO, YOUR HONOR, I'D RATHER HAVE IT

21   COME UP AND HAVE THE JURY CONSIDER IT, HONESTLY.

22        THE COURT:  DID YOU UNDERSTAND WHAT I SAID?

23        THE DEFENDANT:  I UNDERSTAND WHAT YOU TOLD ME.

24        THE COURT:  WHAT DID I SAY?

25        THE DEFENDANT:  YOU SAID THAT IT IS BETTER THAT IF

26   I ADMIT IT TO YOU.

27        THE COURT:  NO, I DIDN'T SAY IT'S BETTER, I SAID

28   THAT'S WHAT YOUR ATTORNEY HAS ASKED.

27

1    THE DEFENDANT:  MY ATTORNEY IS TELLING YOU THAT IT

2    IS BETTER THAT I ADMIT IT TO YOU, FOR WHATEVER PURPOSES,

3    HOWEVER, AND NOT TO THE JURY -- AND NOT HAVE THE JURY

4    HEAR ALL OF THAT, AND THEN THIS GOES TO -- BASED ON THAT,

5    I DON'T TESTIFY IN MY DEFENSE.

6        THE COURT:  NO.  NO.

7        YOU DIDN'T SOUND LIKE YOU UNDERSTOOD.

8        THE DEFENDANT:  YEAH.

9        THE COURT:  I SAID SOMETIMES THAT THEY HEAR -- IF

10   THEY HEAR OF A PRIOR CONVICTION FOR THE SAME THING, THEY

11   MAY USE THAT TO SAY THAT BECAUSE YOU DID IT BEFORE, THEN

12   YOU MOST LIKELY DID IT HERE.

13       THE DEFENDANT:  I UNDERSTAND THAT PART, MA'AM.

14       THE COURT:  YOU WANT THEM TO HAVE AN OPEN MIND.

15       THE DEFENDANT:  BECAUSE THAT IS THE ONLY MANNER IN

16   WHICH I CAN ACCOUNT FOR THE EXISTING FELONY BASED ON THE

17   REQUIREMENT AND BASED ON 290.

18       THE COURT:  THE JURY DOES NOT KNOW WHETHER IT

19   SHOULD BE A FELONY OR A MISDEMEANOR, THEY ARE JUST TOLD

20   THAT IT IS A FELONY.  THEY'RE NOT TOLD WHY IT IS A

21   FELONY.

22       THE DEFENDANT:  MA'AM, THE ONLY WAY THAT I CAN BE

23   QUALIFIED TO REGISTER UNDER PENAL CODE 290 IS THAT I'M A

24   RAPIST.  NO, THANK YOU, MA'AM.  I'D RATHER HAVE THEM BE

25   AWARE OF BOTH, AND THE MISDEMEANOR, TOO.

26       THE COURT:  THAT'S YOUR DECISION.

27       MS. DANTO:  THAT'S ACTUALLY A DIFFERENT ISSUE.  I

28   THINK MR. BADUE IS CONFUSING HIS ADMISSION OF THE PRIOR

1   290 WITH HIS ADMISSION OF THE CONVICTION FOR THE 314

2   MISDEMEANOR.   OKAY.

3           I WAS NOT SUGGESTING THAT MR. BADUE ADMIT THAT HE

4   WAS CONVICTED OF INDECENT EXPOSURE FOR THE VERY SAME

5   REASON THAT HE JUST SAID THAT I THINK THE JURY IS GOING

6   TO ASSUME IF THEY DON'T HEAR IT, THAT HE IS A CHILD

7   MOLESTER.

8           IF THE JURY HEARS THAT THE REGISTRATION

9   REQUIREMENT WAS ON A MISDEMEANOR INDECENT EXPOSURE, TO ME

10  THAT'S LESS NEGATIVE.

11          THE DEFENDANT:   THANK YOU.

12          MS. DANTO:   I WAS NOT REQUESTING THAT MR. BADUE

13  ADMIT THE CONVICTION FOR THE 314, I WAS EXPECTING THE

14  DISTRICT ATTORNEY IS GOING TO HAVE TO PROVE THAT.   MY IN

15  LIMINE MOTION WAS TO HAVE MY CLIENT ADMIT ONLY THAT HE

16  HAD PREVIOUSLY BEEN CONVICTED OF A PRIOR FAILING TO

17  REGISTER.

18          THE COURT:   OKAY.

19          DO YOU UNDERSTAND THAT, MR. BADUE?

20          THE DEFENDANT:   YES, AND I STILL SAY THE SAME

21  THING, MA'AM, I'D RATHER PRESENT ALL OF THE PRIOR

22  CONVICTED FACTS FOR CONSIDERATION TO THE JURORS, MA'AM,

23  SIMPLY.   I HAVE THAT RIGHT.

24          THE COURT:   AS LONG AS YOU UNDERSTAND.

25          THE DEFENDANT:   OKAY.   I UNDERSTAND.

26          THE COURT:   DO YOU UNDERSTAND THE DANGER OF DOING

27  THAT?

28          I MEAN, DO YOU UNDERSTAND WHAT I EXPLAINED MIGHT

1  BE A PROBLEM WITH DOING THAT?

2         THE DEFENDANT:  YES.

3         THE COURT:  OKAY, AS LONG AS YOU UNDERSTAND.

4         MR. DICK:  YOUR HONOR, JUST SO MR. BADUE IS AWARE,

5  I AM WILLING TO STIPULATE TO THE PRIOR CONVICTIONS AS

6  WELL AS THERE WILL BE A WITNESS COMING IN TO TESTIFY

7  REGARDING THE PRIOR CONVICTIONS, REGARDING FINGERPRINT

8  ANALYSIS AND PHOTOGRAPHS AND GOING THROUGH THE CERTIFIED

9  PRIORS, THAT'S ONE WAY OF DOING IT, THE OTHER WAY OF

10  DOING IT, I'M WILLING TO ENTER INTO A STIPULATION ON THE

11  PRIOR CONVICTIONS.  SO HOWEVER THE DEFENSE WANTS TO

12  HANDLE THAT, IT'S FINE WITH ME.

13         MS. DANTO:  WELL, I HAD ASSUMED THAT MY CLIENT WAS

14  NOT GOING TO BE WILLING TO ADMIT IDENTITY OR ANY OF THOSE

15  KINDS OF NECESSARY ELEMENTS THE DISTRICT ATTORNEY HAS TO

16  PROVE, AND I INDICATED THAT TO MR. DICK, THAT I WAS NOT

17  GOING TO STIPULATE TO THAT, THAT MY CLIENT WAS NOT GOING

18  TO ADMIT THAT, BUT I DO WANT THE RECORD TO BE PERFECTLY

19  CLEAR THAT IT IS MY RECOMMENDATION THAT IT'S IN MY

20  CLIENT'S BEST INTEREST THAT HE ADMIT THAT HE SUFFERED THE

21  PRIOR 290, AND THAT IF HE IS NOT WILLING TO ADMIT TO

22  THAT, THEN THAT IS GOING CONTRARY TO HIS COUNSEL'S

23  RECOMMENDATION.

24         THE COURT:  MR. BADUE, DO YOU UNDERSTAND THAT?

25         THE DEFENDANT:  SO SHE WANTS ME TO NOT ADMIT TO

26  THE PRIOR 290?

27         THE COURT:  NO, SHE WANTS YOU TO ADMIT THE PRIOR

28  290 TO THE COURT SO THAT THE JURY DOESN'T HEAR ABOUT IT.

1     THE DEFENDANT:  ADMIT THAT TO THE COURT SO THAT

2   THE JURY DOESN'T HEAR ABOUT IT, I'D RATHER PRESENT THE

3   PRIOR 290'S TO THE JURY, ALSO, MA'AM.

4     BASICALLY, MA'AM, I'D RATHER GO AHEAD AND PRESENT

5   ALL OF THE MATTERS AND THE FACTS BEING PRESENTED BY THE

6   PROSECUTION TO THE JURY, AND THEN I NEED TO DEVELOP SOME

7   TYPE OF AN ARGUMENT, PLAN, AND COORDINATE WITH THE PUBLIC

8   DEFENDER SO THAT WE CAN ADDRESS ALL OF THAT TO THE JURY.

9     THE COURT:  NOW, ONCE YOU STICK THAT OUT THERE,

10   YOU CAN'T EXPECT HER TO FIX IT.

11     THE DEFENDANT:  APPARENTLY, MA'AM.  I UNDERSTAND

12   WHAT SHE SAID.

13     THE COURT:  OKAY.

14     THE DEFENDANT:  THANK YOU.

15     THE COURT:  ALL RIGHT.

16     MS. DANTO:  JUDGE, I'M A LITTLE CONCERNED ABOUT

17   MR. BADUE'S SPECULATION AS TO HOW THE CASE IS GOING TO BE

18   CONDUCTED.

19     THE COURT:  OKAY.

20     MS. DANTO:  BECAUSE BASED ON THE COURT'S RULING,

21   THE COURT IS EFFECTIVELY ELIMINATING THE DEFENSE THAT

22   MR. BADUE WOULD LIKE TO PROVE TO THE JURY, WHICH I AM NOT

23   GOING TO VIOLATE THE COURT'S RULING ON.

24     THE COURT:  DO YOU WANT TO TAKE A MOMENT TO TALK

25   TO HIM AND SEE IF THAT WILL BE AN ISSUE DURING THE TRIAL?

26     THE QUESTION IS WHETHER OR NOT HE WILL BE ABLE TO

27   LIVE WITH THE COURT'S RULING.

28     MS. DANTO:  WELL, I HAVE MY DOUBTS.

1    THE DEFENDANT:  BASICALLY, MA'AM, BASICALLY -- I

2  HAVE SOMETHING I'D LIKE TO SAY, BASICALLY I DO NOT HAVE A

3  DEFENSE, I DO NOT HAVE AN AMPLE DEFENSE THAT WILL PROVE

4  THAT I WAS ALREADY PROSECUTED ON PROBATION VIOLATION

5  BASED ON THE PROSECUTION'S STATEMENTS.

6    NOW, THE ONLY DEFENSE THAT I HAVE, NEEDLESS TO

7  SAY, IS ON APPEAL, WHICH MEANS THIS:  THAT THE ONLY WAY

8  THAT I CAN PROVE THE IRREGULARITY OR THE ERRONEOUSNESS OF

9  THE PROCESS THAT THE DISTRICT ATTORNEY IS LITIGATING THAT

10  I AM ABLE TO SHOW THAT A PLEA BARGAIN AGREEMENT DOES NOT

11  STAND AS A NEGOTIABLE CONVICTION.  AND THAT'S THE ONLY

12  DEFENSE THAT I HAVE.  BUT THERE'S NO DEFENSE THAT I HAVE

13  WHERE I CAN STOP THE JURY FROM RULING IN THE DISTRICT

14  ATTORNEY'S FAVOR.  I MEAN THAT'S LUDICROUS, THAT'S

15  RIDICULOUS.

16    MS. DANTO:  WELL, THAT'S WHAT I TRIED TO EXPLAIN

17  TO MY CLIENT OVER THE ENTIRE PERIOD OF TIME THAT I'VE

18  REPRESENTED HIM, THAT I DIDN'T SEE THAT THERE WAS A

19  FACTUAL DEFENSE TO THIS CASE.

20    THE DEFENDANT:  THERE IS NONE, NOT BASED ON THAT.

21  I DO NOT HAVE A DOUBLE JEOPARDY DEFENSE, THERE IS NO

22  OTHER DEFENSE.  LET'S HAVE THE JURY HAVE ALL THE

23  PROSECUTION'S STATEMENTS AND PRIOR CONVICTIONS AND

24  EVERYTHING ELSE AND LET THE JURY DECIDE, THEN I CAN

25  APPEAL, AND THAT SOUNDS REALISTIC.

26    MR. DICK:  JUST SO MR. BADUE'S AWARE, THE JURY

27  CAN'T CONSIDER DOUBLE JEOPARDY, THAT'S WHAT THE MOTION

28  IS.

32

1    THE COURT:  IT APPEARS TO ME THAT HE UNDERSTANDS

2    THAT.

3    MR. DICK:  OKAY.

4    THE COURT:  ANY OTHER MOTIONS IN LIMINE?

5    MS. DANTO:  YOU HONOR, MY CLIENT IS CHARGED WITH

6    HAVING A PRIOR PRISON COMMITMENT, AND I WOULD ASK THAT BE

7    BIFURCATED.

8    MR. DICK:  ACTUALLY, THE DIFFICULTY WITH THAT IS,

9    IS THAT THAT'S THE MOTIVE FOR THE WILLFULNESS AND --

10   ACTUALLY, I THINK WE TALKED ABOUT THIS BRIEFLY IN THE

11   MOTIONS IN LIMINE THAT I INTEND TO CALL THE DEFENDANT'S

12   PAROLE OFFICER WHO WILL TESTIFY THAT THE DEFENDANT WAS

13   RELEASED FROM PRISON ON OCTOBER 10TH, 2001, AND

14   ABSCONDED, AND THAT'S THE WILLFULNESS BEHIND THE FAILURE

15   TO REGISTER.  SO THE PRISON PRIOR IS A PRIOR UNDER 667.5

16   SUBSECTION (B).

17   I CERTAINLY CAN PROVIDE A CERTIFIED COPY OF 11350

18   CONVICTION AFTER TRIAL, I HAVE NO PROBLEM DOING THAT, WE

19   CAN DO THAT IN FRONT OF THE JURY, OR HOWEVER COUNSEL

20   WANTS TO HANDLE THAT, BUT IN TERMS OF MY CASE IN CHIEF,

21   THE FACT THAT HE WAS RELEASED FROM PRISON ON OCTOBER OF

22   2001, THAT GOES TO THE WILLFULNESS UNDER 290.

23   MS. DANTO:  I DON'T KNOW THAT THE JURY NECESSARILY

24   HAS TO BE ADVISED OF THE FACT THAT HE HAD BEEN

25   SUBSEQUENTLY RELEASED FROM PRISON AT THAT PARTICULAR

26   TIME, I THINK THAT THE WITNESS COULD TESTIFY THAT AS A

27   PARTICULAR DATE HIS REQUIREMENT THEN TO REGISTER WAS

28   TRIGGERED.

1    WITHOUT NECESSARILY GOING INTO THE SPECIFICATIONS

2  THAT HE WAS, IN FACT, A PAROLE OFFICER OR THAT MY CLIENT

3  WAS NECESSARILY RELEASED FROM PRISON, I DON'T THINK THAT

4  THE REGISTRATION REQUIREMENT IS TRIGGERED BY HIS RELEASE

5  FROM CUSTODY.

6    MR. DICK:  THAT DOES EXPLAIN THE WILLFULNESS.  THE

7  REASON THAT HE DOESN'T REGISTER IS BECAUSE HE'S GOT A

8  PAROLE VIOLATION, HE ABSCONDS FROM PAROLE, THAT'S WHY HE

9  DOESN'T REGISTER ON HIS BIRTHDAY, HE ABSCONDS FROM HIS

10  PAROLE OFFICER, SO THAT'S THE REASON WHY.

11    THE ANNUAL UPDATE SIMPLY SAYS THAT HE HAD TO

12  REGISTER, AND HE JUST DOESN'T EXPLAIN TO THE JURY WHY HE

13  WOULD MISS HIS 2002 ANNUAL UPDATE.  THE REASON WHY HE

14  MISSED THE 2002 ANNUAL UPDATE IS BECAUSE HE ABSCONDED AND

15  HE WAS HIDING FROM LAW ENFORCEMENT.

16    THE OTHER TWIST IS THAT HE HAD TO REGISTER WITHIN

17  FIVE DAYS OF HIS RELEASE FROM CUSTODY, HE DIDN'T DO THAT

18  EITHER.  THAT SHOULD HAVE BEEN CHARGED TO THE COMPLAINT.

19  IT WASN'T PROVED UP AT PRELIM.  THAT'S A SEPARATE ISSUE

20  COMPLETELY.  SO THE FACT THAT HE WAS RELEASED FROM PRISON

21  IS EXTREMELY RELEVANT BECAUSE IT EXPLAINED WHY HE DOESN'T

22  REGISTER, HE IS ABSCONDING FROM PAROLE RIGHT AFTER HE GOT

23  RELEASED FROM PRISON.

24    THE COURT:  IS IT NECESSARY TO USE THE WORD PRISON

25  RATHER THAN CUSTODY.  AND I'M NOT EVEN GOING TO SAY THAT

26  YOU DON'T HAVE TO USE THE WORD PAROLE, YOU CAN USE THE

27  WORD PAROLE AND GO AHEAD AND INTRODUCE THE PAROLE OFFICER

28  USING HER REAL TITLE, IF THE JURY PUTS THAT TOGETHER, WE

1  CAN'T AVOID THAT, BUT DO YOU KNOW THAT YOU CAN JUST USE

2  THE WORD CUSTODY INSTEAD OF THE WORD PRISON?

3        MR. DICK:  MY ONLY CONCERN IS THAT THE REASON HE

4  DOESN'T REGISTER IS BECAUSE HE DOESN'T WANT TO GO BACK TO

5  PRISON ON THE PAROLE VIOLATION.

6        I UNDERSTAND WHAT THE COURT'S SAYING IS, COULD YOU

7  SIMPLY SAY HE DIDN'T GO BACK INTO CUSTODY ON THE PAROLE

8  VIOLATION.  INSTEAD OF GOING BACK TO PRISON ON THAT

9  PARTICULAR -- I MEAN, I WANT THE JURY TO KNOW THE REAL

10  REASON WHY, BUT IF THE COURT FEELS IT'S 352, I'LL SUBMIT

11  ON THAT ISSUE.

12        THE COURT:  OKAY.  THEN THE MOTION TO BIFURCATE IS

13  GRANTED.

14        AND THEN THE PEOPLE APPEAR TO HAVE AGREED TO USE

15  THE WORD CUSTODY RATHER THAN PRISON.

16        MR. DICK:  THE BIFURCATION IS ON THE 667.5(B), SO

17  I CAN'T PROVE THE PRIOR CONVICTION PRISON SENTENCE;

18  HOWEVER, I COULD HAVE A PAROLE OFFICER SAY, I AM A PAROLE

19  OFFICER, HE WAS RERELEASED FROM CUSTODY ON OCTOBER 10TH,

20  AND THEN GO FROM THERE, JUST NOT THE WORD PRISON.

21        THE COURT:  YES.

22        THE DEFENDANT:  I OBJECT BECAUSE IT APPEARS --

23        THE COURT:  WAIT JUST A MINUTE.

24        ARE THERE ANY OTHER MOTIONS IN LIMINE?

25        MS. DANTO:  I DON'T HAVE ANY OTHER ONES.

26        THE COURT:  NOW --

27        THE DEFENDANT:  I OBJECT TO THE BIFURCATION.

28        THE COURT:  WHEN THE JURY COMES, YOU'RE NOT

35

1    ALLOWED TO DO THAT ANYMORE.

2         THE DEFENDANT:  FINE.

3         THE COURT:  DO YOU UNDERSTAND?

4         THE DEFENDANT:  UH-HUH.

5         THE COURT:  ALL RIGHT.  AND IF YOU CONTINUE TO DO

6    THAT AFTER I HAVE TOLD YOU NOW TO STOP --

7         THE DEFENDANT:  YEAH.

8         THE COURT:  -- WHAT DO YOU THINK WILL HAPPEN?

9         THE DEFENDANT:  I DON'T KNOW WHAT WILL HAPPEN,

10   MA'AM.

11        THE COURT:  YOU'LL BE EXCLUDED AND YOUR TRIAL WILL

12   GO ON WITHOUT YOU.

13        THE DEFENDANT:  OKAY.

14        THE COURT:  OKAY.

15        NOW, WE DON'T WANT THAT TO HAPPEN, MR. BADUE,

16   RIGHT?

17        THE DEFENDANT:  UH-HUH.

18        THE COURT:  EVEN THOUGH YOU MAY NOT LIKE A RULING

19   THAT I MAKE, IT'S MY DUTY TO MAKE THE RULING AND THEN YOU

20   HAVE TO ABIDE BY IT, IF YOU DON'T LIKE IT AT THE END, YOU

21   CERTAINLY MAY INCLUDE THAT IN YOUR APPEAL.

22        SO YOU HAVE A WAY TO HAVE EVERYTHING THAT I DO

23   REVIEWED BY A HIGHER COURT, SO YOU HAVE TO ACCEPT MY

24   RULINGS AND WHEN I MAKE THEM.

25        THE DEFENDANT:  FINE.

26        I OBJECT TO THE BIFURCATION BECAUSE I THINK IT

27   FALSELY MISLEADS THE JURY TO ASSUME OR TO CONCLUDE -- IT

28   LEADS THEM TO CONCLUDE THAT I WAS LIKE DISCHARGED OR

36

1    RELEASED FROM PRISON OR CUSTODY AND THAT I HAD A

2    LIFE-LONG REGISTRATION OR SOMETHING, AND THAT THE

3    CIRCUMSTANCES OF MY PLEADING THIS OR THAT, MORE OR LESS,

4    I THINK IT FALSIFIES THE VALIDITY.

5         THE COURT:  ACTUALLY, THE MOTION TO BIFURCATE JUST

6    MEANS THAT THE JURY WILL HEAR ABOUT THAT PRISON TERM

7    AFTER THEY'VE ALREADY -- NO, WAIT, IT MEANS THEY'LL HEAR

8    ABOUT THE PRIOR PRISON TIME AFTER THEY'VE MADE A DECISION

9    ON THE 290 AND THE 148.9.

10        THE DEFENDANT:  UH-HUH.

11        THE COURT:  ARE YOU ASKING THAT THEY HEAR ABOUT IT

12   AT THE SAME TIME AS THEY HEAR --

13        THE DEFENDANT:  YES.  YES.

14        MS. DANTO:  JUDGE, I DON'T THINK THAT'S A DECISION

15   MY CLIENT GETS TO MAKE, WITH ALL DUE RESPECT.

16        THE DEFENDANT:  BECAUSE I'M UNDER THE IMPRESSION

17   THAT THAT IS FAIR TO ME ON APPEAL, THE SAME WAY THAT NOW

18   I WANT TO ASK YOU --

19        THE COURT:  WELL, I'LL TELL YOU WHAT, I WILL

20   RESERVE A RULING ON THAT, AND SEE IF THE DEFENDANT'S

21   OBJECTION TO BIFURCATION, IF HE HAS THAT RIGHT TO KEEP IT

22   FROM HAPPENING.

23        I WILL TAKE THAT UNDER SUBMISSION.

24        THE DEFENDANT:  NOW, I HAVE ONE LAST THING TO ASK,

25   MA'AM, BEFORE YOU GET STARTED WITH THE JURY, LET ME

26   FINISH THE MOTION ON THE SUBPOENA DUCES TECUM UNDER

27   EVIDENCE CODE 451, PENAL CODE 1985 AND PENAL CODE SECTION

28   1987.5, AND THE SUBPOENA IS FOR THE CITY CLERK'S OFFICE

1    IN STOCKTON, THE CORRECTIONS DEPARTMENT IN SAN JOSE ON

2    COLEMAN AVENUE, AND A VOCATION INSTITUTION IN TRACY, THE

3    INFORMATION THAT I NEEDED FROM THEM IS BASICALLY

4    DESCRIBED IN THIS.

5           CAN I HAVE THIS ADMITTED?

6           THE COURT:  WHAT IS THE INFORMATION THAT YOU WANT?

7           THE DEFENDANT:  THE INFORMATION IS, NUMBER ONE,

8    THE CHARGES IN THE PROBATION REPORT -- THAT THE CHARGES

9    WERE PENAL CODE 314, PENAL CODE 290, (G)(1), PENAL CODE

10   SECTION 1203.2; AND NUMBER TWO, THE CHARGES IN THE PAROLE

11   REPORT, HEALTH AND SAFETY CODE 11350(A).

12          THE COURT:  WHEN THE PAROLE OFFICER COMES, WILL

13   SHE HAVE THAT DOCUMENT WITH HER?

14          MR. DICK:  I'M NOT SURE WHAT DOCUMENT --

15          THE COURT:  PETITION TO REVOKE HIS PAROLE.

16          MR. DICK:  SHE MAY OR MAY NOT.  I CAN CALL HER AND

17   ASK HER TO BRING IT.

18          THE COURT:  NOW, MR. BADUE, DID YOU UNDERSTAND

19   THAT?

20          THE DEFENDANT:  YEAH.

21   WILL YOU LET ME CONCLUDE, THOUGH?

22          THE COURT:  WHAT DOES THAT MEAN?

23   WHAT DOES THAT MEAN?

24          THE DEFENDANT:  YEAH, THERE ARE TWO MORE.

25          THE COURT:  WHAT DOES THAT MEAN?

26          THE DEFENDANT:  YOU ASKED ME IF I HEARD HIM?

27          THE COURT:  WHAT DID HE SAY?

28          THE DEFENDANT:  ABOUT THE PAROLE REPORT, I SAID

38

1    YEAH, I HEARD HIM.

2            THE COURT:  WHAT DID HE SAY?

3            THE DEFENDANT:  THAT SHE'LL PROBABLY HAVE IT WITH

4    HER.

5            AND THERE'S ITEM NUMBER THREE IN THE MOTION TO

6    SUBPOENA, ITEM NUMBER THREE IS A WARRANT NOTICE UNDER

7    PENAL CODE 290 THAT WAS SERVED TO ME BY A MISS JOHNSON

8    (PHONETIC) ON MAY 16TH, 2002, FOR THE SAN JOSE POLICE

9    DEPARTMENT, AND I ALSO NEED A COPY OF THAT, AND THAT'S IN

10   THE CITY OF TRACY.

11           THE COURT:  I DON'T KNOW WHAT THAT IS.

12           THE DEFENDANT:  WELL, BASICALLY WHAT I'M TRYING TO

13   DO IS GET MY MOTION TO SUBPOENA THESE DOCUMENTS SO THAT

14   THEY CAN BE PUT ON THE COURT'S RECORD FOR PURPOSE OF MY

15   APPEAL.  I MAY NOT BE ABLE TO USE THIS AS EVIDENCE IN MY

16   DEFENSE, BUT I CAN USE IT ON THE BASIS OF GROUNDS TO

17   APPEAL.

18           I CAN DO THAT.

19           THE COURT:  YOU HAVE TO DISCUSS THOSE THINGS WITH

20   YOUR APPELLATE ATTORNEY.

21           AS FAR AS THE SUBPOENA, THE COURT IS NOT GOING TO

22   ISSUE THAT.

23           THE DEFENDANT:  ALL RIGHT.  THAT WILL STAY ON THE

24   RECORD, MA'AM, WHAT YOU'RE SAYING TO ME NOW.

25           THE COURT:  MR. BADUE, DO YOU REALIZE THAT

26   EVERYTHING IS ON THE RECORD?

27           THE DEFENDANT:  THANK YOU.

28           I'M FINISHED.

1      MS. DANTO:  JUDGE, THERE IS ONE ISSUE THAT I DON'T

2   THINK THAT WE HAVE ADDRESSED AND THAT IS WITH RESPECT TO

3   MY CLIENT DRESSING OUT, I INDICATED TO THE COURT IN

4   CHAMBERS THAT MR. BADUE IS REFUSING TO DRESS IN STREET

5   CLOTHES, EVEN THOUGH I HAVE OFFERED TO ARRANGE FOR THEM

6   TO BE FURNISHED, AND HE INDICATES THAT HE WANTS TO GO TO

7   TRIAL WEARING HIS JAIL CLOTHES, THAT'S OBVIOUSLY AGAINST

8   MY RECOMMENDATION, BUT I WANTED THE COURT TO BE AWARE OF

9   THAT, AND I WANT THE RECORD TO BE PERFECTLY CLEAR ON THAT

10   ISSUE.

11      THE COURT:  MR. BADUE, DO YOU UNDERSTAND THAT?

12      THE DEFENDANT:  YEAH.

13      THE COURT:  IT LOOKS LIKE WE HAVE A COUPLE MATTERS

14   LEFT TO COMPLETE TOMORROW MORNING, THAT'S REGARDING THE

15   USE OF THE PRIOR CONVICTION OF THE 148.9 FOR IMPEACHMENT

16   AND ALSO THE DEFENDANT'S ABILITY TO OBJECT TO THE MOTION

17   TO BIFURCATE.

18      MS. DANTO:  I THINK IT WAS 314.

19      MR. DICK:  314.

20      THE COURT:  I'M SORRY, 314.  ALL RIGHT.

21      OFF THE RECORD, PLEASE.

22      (WHEREUPON, THERE WAS A DISCUSSION HELD OFF THE

23   RECORD, NOT REPORTED.)

24      THE COURT:  WE'LL GO BACK ON THE RECORD.

25      THE DEFENDANT:  I REALLY WANT TO PUT THIS ON THE

26   RECORD.  FOR PURPOSE OF MY APPEAL, I WANTED TO KNOW IF I

27   HAVE A PETITION FOR HABEAS CORPUS, IF I CAN JUST FILE IT

28   WITH THE CLERK, SIMPLY?

40

1    THE COURT:  YOU CANNOT DO A WRIT OF HABEAS CORPUS

2  RIGHT NOW.

3    THE DEFENDANT:  I MEAN, WHEN THE TRIAL BEGINS.

4    THE COURT:  NO.

5    YOU CAN'T DO IT BEFORE THE CONVICTION.

6    THE DEFENDANT:  BUT I HAVE TO DO IT BEFORE THE

7  CONVICTION.

8    THE COURT:  YOU CANNOT DO IT BEFORE THE

9  CONVICTION.

10    THE DEFENDANT:  I DON'T WANT TO DO THE WRIT OF

11  HABEAS CORPUS AS AN APPEAL, I'VE ALREADY TRIED THAT IN

12  THE PAST, IT DOESN'T WORK, BUT WHAT I WANT TO DO IS A

13  WRIT OF HABEAS CORPUS FOR THE COURT'S RECORD, THAT'S ALL.

14    THE COURT:  THIS ISN'T THE RIGHT TIME FOR THAT.

15    THE DEFENDANT:  I MEAN, WHEN THE TRIAL BEGINS, I

16  CAN DO THAT, CORRECT?

17    THE COURT:  THAT STILL WON'T BE THE RIGHT TIME.

18    THE DEFENDANT:  WHY NOT, MA'AM?  I'M NOT

19  UNDERSTANDING YOU.  OH, YOU MEAN SIMPLY SEND IT IN THE

20  MAIL OR SOMETHING?

21    THE COURT:  NO, BECAUSE IT'S NOT THE APPROPRIATE

22  TIME TO FILE A WRIT OF HABEAS CORPUS.

23    THE DEFENDANT:  OKAY.  OKAY.  OKAY.  SO SIMPLY I

24  JUST CAN'T FILE THIS OR THE RECORD WON'T REFLECT THAT I

25  WANTED TO USE DOUBLE JEOPARDY AS MY DEFENSE?

26    THE COURT:  OH, THE RECORD DOES REFLECT THAT.

27    THE DEFENDANT:  THANK YOU, MA'AM.

28    CAN I HAVE A COPY OF THAT PAPER, THE ONE THAT

41

1    SAYS -- BARRING ME FROM USING DOUBLE JEOPARDY AS

2    COLLATERAL?

3            THE COURT:  I AM DOING THAT.

4            YOU WANT A COPY OF HIS MOTION?

5            THE DEFENDANT:  YES.

6            THE COURT:  WHY DON'T YOU ASK MISS DANTO AND

7    SHE'LL GIVE YOU A COPY OF THAT.

8            THE DEFENDANT:  AND I'LL WAIT FOR THE CASES, TOO.

9            THE COURT:  MISS DANTO MOST LIKELY WILL GIVE YOU A

10   COPY OF THE MOTIONS TOMORROW.

11           THE DEFENDANT:  JUST THE CASES THEN.

12           THE COURT:  YES, FOR TODAY.

13           (WHEREUPON, DISCUSSION HELD BETWEEN ATTORNEY AND

14   DEFENDANT.)

15           (WHEREUPON, JURY TRIAL TO RECONVENE FEBRUARY 5,

16   2003.)

17                        ---OOO---

18

19

20

21

22

23

24

25

26

27

28

42

1   STATE OF CALIFORNIA        )
                              )    SS.
2   COUNTY OF SANTA CLARA     )

3

4

5

6           I, PATRICIA NORRIS, DO HEREBY CERTIFY THAT:

7           I AM AN OFFICIAL SHORTHAND REPORTER OF THE
    SUPERIOR COURT OF THE STATE OF CALIFORNIA, IN AND FOR THE
8   COUNTY OF SANTA CLARA, AND THAT AS SUCH I REPORTED IN
    STENOTYPE THE PROCEEDINGS HAD IN THE WITHIN-ENTITLED
9   MATTER AT THE TIME AND PLACE THEREIN SET FORTH; AND THAT
    THE SAME IS A FULL, TRUE AND CORRECT TRANSCRIPTION OF
10  SAID STENOTYPE AS REPORTED BY ME TO THE BEST OF MY
    ABILITY.
11

12          I FURTHER CERTIFY THAT I HAVE COMPLIED WITH
    CCP 237(A)(2) IN THAT ALL PERSONAL JUROR IDENTIFYING
13  INFORMATION HAS BEEN REDACTED, IF APPLICABLE.

14  DATED:

15

16

17

18                              _____
                                PATRICIA NORRIS, CSR NO. 8475
19

20

21

22  ATTENTION:

23          CALIFORNIA GOVERNMENT CODE
            SECTION 69954(D) STATES:
24
            "ANY COURT, PARTY, OR PERSON WHO HAS PURCHASED A
25  TRANSCRIPT MAY, WITHOUT PAYING A FURTHER FEE TO THE
    REPORTER, REPRODUCE A COPY OR PORTION THEREOF AS AN
26  EXHIBIT PURSUANT TO COURT ORDER OR RULE, OR FOR INTERNAL
    USE, BUT SHALL NOT OTHERWISE PROVIDE OR SELL A COPY OR
27  COPIES TO ANY OTHER PARTY OR PERSON."

28

1           TO THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

2                       SIXTH APPELLATE DISTRICT

3

4

5

6

7    THE PEOPLE OF THE STATE OF CALIFORNIA,

8                   PLAINTIFF AND RESPONDENT,        No. H025695

9          VS.                                   No. CC241061

10   STEVEN BADUE,

11                   DEFENDANT AND APPELLANT.
     _____/

12

13                          ---oOo---

14              REPORTER'S TRANSCRIPT ON APPEAL

15        FROM THE JUDGMENT OF THE SUPERIOR COURT

16        OF THE STATE OF CALIFORNIA, IN AND FOR

17               THE COUNTY OF SANTA CLARA

18             HONORABLE RISE PICHON, JUDGE

19                        Volume 2

20                     Pages 43 - 80

21                    February 5, 2003

22

23   A P P E A R A N C E S:

24   FOR THE APPELLANT:          SIXTH DISTRICT APPELLATE PROGRAM
                                 100 N. Winchester Blvd., #310
25                               Santa Clara, CA  95050

26   FOR THE RESPONDENT:         OFFICE OF ATTORNEY GENERAL
                                 455 Golden Gate Avenue
27                               Room 11000
                                 San Francisco, CA  94102

28

1          IN THE SUPERIOR COURT OF THE STATE OF CALIFORNIA

2              IN AND FOR THE COUNTY OF SANTA CLARA

3            BEFORE THE HONORABLE RISE PICHON, JUDGE

4

5                          ---o0o---

6

7    PEOPLE OF THE STATE OF CALIFORNIA,

8              Plaintiff,              No.  CC241061

9       vs.

10   STEVEN BADUE,

11             Defendant.

     _____/

12

13                         ---o0o---

14

15          REPORTER'S TRANSCRIPT OF PROCEEDINGS

16              Held on February 5, 2003

17

18

19

20

21              A P P E A R A N C E S:

22   FOR THE PEOPLE:          STEVEN DICK
                              DEPUTY DISTRICT ATTORNEY
23

24   FOR THE DEFENDANT:       RANDY DANTO
                              DEPUTY PUBLIC DEFENDER
25

26   REPORTED BY:            CINDI M. JOHNSON, CSR
                             CERTIFICATE NO. 10125
27

28

1

## I N D E X   O F   W I T N E S S E S

2

3

4

| WITNESSES: | Direct | Cross | Redirect | Recross |
|---|---|---|---|---|
| For the People: | | | | |
| Teresa McDaniel | 48 | | | |
| Francis Gallegos | 53 | | | |
| Trak Keo | 62 | | | |
| Richard Peretti | 67 | | | |

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

```
 1                    I N D E X   O F   E X H I B I T S

 2

 3

 4      EXHIBITS                                  Iden.      Evid.

 5               People's

 6      1-5      certified copy of priors                    47

 7       6       969b packet                                 53

 8      7-9      8102 forms                                  59

 9      10       photo of defendant                          61

10      11       certified VCIN document                     56

11      12       certified booking photo                     67

12      13       certified booking photo                     67

13      14       booking photo and fingerprints              71

14      15       booking form                                71

15      16       booking photo                               71

16      17       8102 form                                   71

17      18       8102 form                                   71

18

19

20

21

22

23

24

25

26

27

28
```

```
 1   San Jose, California                    February 5, 2003

 2

 3                    P R O C E E D I N G S

 4           THE COURT:  Good morning.  This is the Court trial

 5   of Steve Badue.  May have I have appearances, please, for

 6   the record.

 7           MR. DICK:  Good morning.  Steve Dick for the

 8   People.

 9           MS. DANTO:  Randy Danto appearing on behalf of

10   Mr. Badue who is present.

11           THE COURT:  We have already had motions in limine.

12   Is there anything else that you need to raise prior to the

13   beginning of the trial?

14           MS. DANTO:  No, Your Honor.

15           MR. DICK:  No, thank you, Your Honor.

16           THE COURT:  And would counsel like to make any

17   opening statement.

18           MR. DICK:  People waive opening statement, Your

19   Honor.

20           MS. DANTO:  Likewise.

21           THE COURT:  Please proceed, Mr. Dick.

22           MR. DICK:  Your Honor, pursuant to Evidence Code

23   450, 452 and 451, the People would ask the Court to take

24   judicial notice of its files that the defendant in this

25   matter has identified himself as Steve Badue with a date of

26   birth of January 14, 1966.

27           THE COURT:  And I believe we have already

28   discussed that in the motions in limine.
```

1    MS. DANTO:  Yes.

2    THE COURT:  Therefore I will take judicial notice

3    of the court's file of those facts.

4    MR. DICK:  Your Honor, I have in my hand what's

5    previously been marked as People's One through Five for

6    purposes of identification.  I have shown them to defense

7    counsel.  They appear to be certified copies of prior

8    convictions for one Steve Badue for a conviction of a 148.9

9    and 11350, a PC 290, PC 314.1 -- and a 314.1 on two separate

10    instances.  I ask that those be moved into evidence as

11    People's One through five.

12    THE COURT:  Is there any objection?

13    MS. DANTO:  I think those are certified copies so

14    I have no objection.

15    THE COURT:  People's Exhibits marked One, Two,

16    Three, Four and Five are received into evidence.

17    (People's Exhibits number One, Two, Three, Four

18    and Five were received in evidence.)

19    MR. DICK:  At this time, the People call Teresa

20    McDaniel to the stand.

21    TERESA MCDANIEL,

22    called as a witness on behalf of the People, being first

23    duly sworn, was examined and testified as follows:

24    THE CLERK:  Would you please state your name and

25    spell it for the record.

26    THE WITNESS:  Teresa Deanne McDaniel.

27    T-E-R-E-S-A.  D. M-C-D-A-N-I-E-L.

28    ///

1        DIRECT EXAMINATION

2    Q.    MR. DICK:    Ms. McDaniel, what do you do for a living?

3    A.    I'm a parole agent for the California Department of

4    Corrections.

5    Q.    How long have you been a parole officer?

6    A.    I have been a parole officer since 1997.

7    Q.    What are your general duties as a parole officer?

8    A.    Supervise parolees in the community and make sure that

9    they obey the law.

10   Q.    Just for the record, what is a parolee?

11   A.    A parolee is a person that was convicted and sentenced

12   to state prison and released to the community.

13   Q.    Once they are released in the community, do they have

14   certain obligations as it relates to their parole officer?

15   A.    Yes, sir.

16   Q.    What is that?

17   A.    They must first report to the parole agent and adhere

18   to the conditions of parole as well as the special

19   conditions of parole and as well as obey any law that is

20   required by them.

21   Q.    Upon their release from state prison, is every person

22   told they have to report to their parole officer?

23   A.    Yes, sir.    Prior to being released from state prison,

24   they are instructed and they are -- they sign their

25   conditions of parole prior to being released instructing

26   them to report to the parole officer.

27   Q.    How long after they are released?

28   A.    The first working day following release.

1    Q.    Have you ever heard of the phrase "absconding from

2    parole"?

3    A.    Yes, sir.

4    Q.    What does absconding from parole mean?

5    A.    It means that the parolee was unavailable for parole

6    supervision and a warrant was issued and acted on.

7    Q.    What are some of the reasons why a warrant may be

8    issued?

9    A.    For the individual -- well, for the parole agent not

10   knowing where the person's whereabouts are.

11   Q.    If a person never reports to their parole officer,

12   would that person be considered to have absconded?

13   A.    Yes.

14   Q.    What are the ramifications of absconding?

15   A.    They are returned back to custody in some cases.

16   Q.    Are there files kept on parolees?

17   A.    Yes, sir.  They are call field files.

18   Q.    Are field files required by law?

19   A.    They are required by the parole division I know.

20   Q.    And that's a government division?

21   A.    State.

22   Q.    And are those files maintained in the regular course

23   of business?

24   A.    Yes, sir.

25   Q.    Are they required to be updated as soon as possible?

26   A.    Yes, sir.

27   Q.    Are they computerized as well?

28   A.    The information, yes, I would say what we call parolee

1    tracking system, so the information they are given from the

2    institution is automatically put into a computer system and

3    our copies are kept in the parolee's field file.

4    Q.    That's updated in the normal course of business?

5    A.    Yes, sir.

6    Q.    As part of government regulations?

7    A.    Yes, sir.

8    Q.    As part of your job, were you assigned a parolee by

9    the name of Steve Badue?

10    A.    Yes, sir.

11    Q.    Have you ever met Steve Badue?

12    A.    No, sir.

13    Q.    Do you know who he is?

14    A.    No, sir.

15    Q.    Did he ever report to you?

16    A.    No, sir.

17    Q.    Did you have an opportunity to review a file on Steve

18    Badue with a date of birth of January 4, 1966?

19    A.    To my recollection, yes, sir.

20    Q.    And did I actually call you on the telephone and

21    request for you to review that file?

22    A.    Yes, sir.

23    Q.    Did you in fact review the file?

24    A.    Yes, sir.

25    Q.    Was Mr. Badue in fact a parolee?

26    A.    Yes, sir.

27    Q.    Was he assigned to you?

28    A.    Yes, sir.

1    Q.    Did he ever report to you?

2    A.    No, sir.

3    Q.    When was he last released from prison from custody?

4    A.    If I might refer to my notes, he was last released on

5    9/17/2002 to parole office, San Jose, Santa Clara County.

6    Q.    And was that September or October of 2002?

7    A.    His most recent release was September 17, 2002 but his

8    release prior to was October 10, 2001.

9    Q.    On the October 10, 2001 release, had he -- let me

10   rephrase the question.  The September 17, 2002, that was

11   after he had served time in another county and then he was

12   transferred to San Jose, is that correct?

13   A.    He had served time in state prison for absconding

14   parole October 10 of 2001.

15   Q.    So we are clear on the time line.  I don't want to

16   talk about the October 10, 2001 release.  Which county was

17   he released into?

18   A.    He was released to Santa Clara County to the San Jose

19   parole office.

20   Q.    Did he ever report to the San Jose parole office as of

21   October 10, 2001, after that date?

22   A.    No, sir.

23   Q.    Has he ever reported since that release on October 10,

24   2001?

25   A.    No, sir.

26   Q.    Was a warrant issued for his arrest?

27   A.    Yes, sir, on October 11, 2001.

28   Q.    Has parole had any contact with him after October 10,

1    2001 upon his release?

2    A.    No, sir.

3    Q.    Would it be fair to say that he absconded?

4    A.    Yes, sir.  That's correct.

5            MR. DICK:  May I have a moment, Your Honor?

6            THE COURT:  Yes.

7            (Pause in proceedings.)

8    Q.    MR. DICK:  Did you determine from what offense

9    Mr. Badue had been incarcerated for?  Did you do that at

10    all?

11    A.    I'm not sure I understand the question.  Is that for

12    his original commitment offenses.

13    Q.    The release from October 10 was on an original release

14    or parole violation?

15    A.    On a parole violation.

16    Q.    He had a previously parole violation, that's what he

17    was serving, not the original offense?

18    A.    Yes, sir.

19    Q.    Thank you.

20            MR. DICK:  I have nothing further.

21            THE COURT:  Cross examination.

22            MS. DANTO:  No questions, Your Honor.

23            THE COURT:  Is there any objection to excusing

24    this witness?

25            MS. DANTO:  No objection.

26            MR. DICK:  No, no objection, Your Honor.

27            THE COURT:  You are excused.

28                    FRANCIS GALLEGOS,

1    called as a witness on behalf of the People, being first

2    duly sworn, was examined and testified as follows:

3              THE CLERK:  Would you please state your name and

4    spell it for the record.

5              THE WITNESS:  Francis, F-R-A-N-C-I-S.  Last name

6    Gallegos, G-A-L-L-E-G-O-S.

7              MR. DICK:  Before I inquire, apologize to Court

8    and counsel.  I have in my hand marked as People's Six which

9    appears to be a certified copy of a 969b packet.  I would

10   ask that that be moved into evidence.

11             MS. DANTO:  No objection.

12             THE COURT:  People's exhibit marked Number Six is

13   received into evidence.

14             (People's Exhibit Number Six was received in

15             evidence.)

16                    DIRECT EXAMINATION

17   Q.    MR. DICK:  Ms. Gallegos, what do you do for a living?

18   A.    I work for the City of San Jose Police Department.

19   Q.    What do you do for them?

20   A.    I maintain the sex registration records.

21   Q.    Are those sometimes referred as 290 records as well?

22   A.    Correct.

23   Q.    How long have you been maintaining the 290 records?

24   A.    Approximately three years.

25   Q.    Did you have any education or training to prepare you

26   for that?

27   A.    Yes, I did.

28   Q.    What is that?

1   A.    I was trained in the 290 time, registration time to

2   maintain the files filed by alphabetical, last name first.

3   We maintain any change of addresses in that same file

4   records.  I was also trained to read the printout such as

5   VCIN, V-C-I-N.

6   Q.    What does that stand for?

7   A.    Violent Crime Information Network.

8   Q.    What is a VCIN?

9   A.    VCIN is a registration area where all agencies within

10  the State of California update their records.

11  Q.    So let's say that somebody registers in Riverside

12  County, would that then go into VCIN?

13  A.    Yes.

14  Q.    If someone comes into the San Jose Police Department,

15  does that then get registered into VCIN?

16  A.    Correct.

17  Q.    That's different than Megan's law database, correct?

18  A.    No, it's the same one.

19  Q.    Let me ask you this.  The Megan's law database, that's

20  maintained by the Department of Justice, correct?

21  A.    Correct.

22  Q.    And the local police department, they are the one that

23  input the information into VCIN?

24  A.    That's correct.

25  Q.    Is VCIN then required by state law for the government

26  agency, the police department to be maintained in the normal

27  course of business?

28  A.    Correct.

1    Q.    And did you by my request run a VCIN for one Steve

2    Badue, a date of birth of January 4, 1966?

3    A.    Yes, I did.

4    Q.    Did you bring that to court today?

5    A.    Yes, I did.

6          MR. DICK:  Your Honor, I have in my hand what's

7    been marked as People's 11 for identification.  I have shown

8    it to defense counsel.  May I approach?

9          THE COURT:  Yes, you may.

10         Could you give me the name of the document?

11         MR. DICK:  VCIN.

12   Q.    MR. DICK:  Is this the certified copy of the VCIN for

13   one Steve Badue?

14   A.    Yes, it is.

15   Q.    When was that run?

16   A.    That was this morning at 8:44.

17   Q.    Based on the VCIN report, had Mr. Badue -- when was

18   the last time Mr. Badue updated his registration?

19   A.    There is no registered address on file.

20   Q.    That would mean he's only registered as a transient?

21   A.    Either that or actually -- there is different reason,

22   either that or the person is in custody.

23   Q.    When was -- has the person according to the VCIN, have

24   they registered since October 10 of 2001?

25   A.    Not since that date, no.

26   Q.    If a person's birthday had therefore been January 4,

27   did that person then miss their annual update?

28   A.    Correct.

1          MR. DICK:  Ask People's 11 be moved into evidence.

2          THE COURT:  Any objection?

3          MS. DANTO:  No.

4          THE COURT:  People's Exhibit marked Number 11 is

5     received into evidence.

6                (People's Exhibit Number 11 was received in

7                evidence.)

8     Q.    MR. DICK:  Based on the VCIN, after October 1st, 2001

9     until March of 2002, had that person registered in any

10    county?

11    A.    No.

12    Q.    In the state?

13                Have you ever heard of a form called a SS 8102?

14    A.    Yes.

15    Q.    What is an 8102?

16    A.    It's a registration annual update or change of address

17    form.

18    Q.    How are those prepared?  Let me rephrase the question.

19    Is there a set form that is used throughout the state as an

20    8102?

21    A.    Yes.

22    Q.    Is that also the registration form?

23    A.    Correct.

24    Q.    So if someone goes in to the San Jose Police

25    Department, that's the form that they fill out, correct?

26    A.    That's correct.

27    Q.    Once a person fills out the form, the 8102, how do the

28    records get maintained?

1    A.    Once they complete the form, that form is updated into

2    both systems, our local system and CJIC and in VCIN.    Once

3    they are updated, the form is sent to myself where I

4    maintain them by alphabetical name.

5    Q.    Are there different colors of the forms?

6    A.    No.

7    Q.    Are some of the older forms white and some of the

8    newer ones yellow?

9    A.    That may be possible.

10    Q.    Did you go to the San Jose Police Department file for

11    Steve Badue?

12    A.    Yes.

13    Q.    And did you pull the 8102s for that person's file?

14    A.    Yes, I did.

15    Q.    Did you bring those to court today?

16    A.    Yes, I did.

17         MR. DICK:    Your Honor, I have in my hand what has

18    been marked as Seven, Eight and Nine for purposes of

19    identification.    May I approach?

20         THE COURT:    Yes, you may.

21    Q.    MR. DICK:    Showing you what has been marked People's

22    Seven, Eight and Nine, do you recognize what those are?

23    A.    Yes, I do.

24    Q.    What are those?

25    A.    These are the registration forms.

26    Q.    For?

27    A.    For sex offenders.

28    Q.    Are these the files from -- are those the records from

1    Steve Badue's file?

2    A.    Yes.

3    Q.    Did you bring those to court today?

4    A.    Yes.

5    Q.    Were those the only forms in the file?

6    A.    Correct.

7    Q.    What is the most recent date that Mr. Badue registered

8    with the San Jose Police Department?

9    A.    6/18/01.

10   Q.    On the back of the 8102, is there a place for someone

11   to sign, give their signature?

12   A.    Yes.

13   Q.    And where they give their signature, does this list

14   the requirements that a person has to do under Penal Code

15   Section 290?

16   A.    That's correct.

17   Q.    On that code on the back of that form, the 8102 dated

18   June 18, 2001, does that have a line that indicates a person

19   has to register annually on their birthday?

20   A.    Yes.

21   Q.    Does it also have a line that someone has to register

22   within five days from their release from custody?

23   A.    Correct.

24   Q.    Are there any other forms, 8102 forms in Mr. Badue's

25   file?

26   A.    Yes, there is.

27   Q.    Beside the ones you brought today this court?

28   A.    No.

```
1   Q.    And when you said yes to the first question, you were

2   referring to People's Eight and Nine?

3   A.    Correct.

4         MR. DICK:  Your Honor, I ask that People's Seven,

5   Eight and Nine be moved into evidence.

6         MS. DANTO:  No objection.

7         THE COURT:  Can you identify them by date.

8         THE WITNESS:  Certainly.  Seven is 6/18/01.  Eight

9   is September 16 of '99.  And Nine is June 14 of '99.

10        THE COURT:  People's Exhibits marked Seven, Eight

11  and Nine are received into evidence.

12             (People's Exhibits Number Seven, Eight and Nine

13             were received in evidence.)

14  Q.    MR. DICK:  When a person fills out an 8102, do they

15  have to sign their name on the bottom?

16  A.    Yes.

17  Q.    Do they have to give a fingerprint?

18  A.    Yes.

19  Q.    Is their picture taken?

20  A.    Correct.

21        MR. DICK:  May I have a moment, Your Honor?

22        THE COURT:  Yes.

23             (Pause in proceedings.)

24  Q.    MR. DICK:  Is there a database where -- let me

25  rephrase the question.  When a person comes in to fill out

26  their -- updates their 8102 and their picture is taken, does

27  that picture get sent anywhere?

28  A.    Yes, it gets sent to the Department of Justice.
```

1  Q.    And is the Department of Justice then required to

2  place that picture as part of the Megan's law database?

3  A.    Correct.

4  Q.    Do you have access to the California sex offender

5  database?

6  A.    Yes, I do.

7  Q.    Are you able to download updates of those -- of that

8  information?

9  A.    Could you please --

10 Q.    That was very confusing.  Do you have access to that

11 database?

12 A.    The Megan's law database?

13 Q.    Yes.

14 A.    Yes, I do.

15 Q.    Do you also have access to the California sex offender

16 database put up by the attorney general?

17 A.    Yes.

18 Q.    Great.  Did you in fact bring a copy of that today to

19 court?

20 A.    I did.

21        MR. DICK:  Your Honor, I have in my hand what has

22 been marked as People's 10 for identification.  May I

23 approach?

24        THE COURT:  Yes.

25 Q.    MR. DICK:  Showing you what's been marked People's 10

26 for identification, do you recognize what that is?

27 A.    Yes, I do.

28 Q.    What is People's 10?

1    A.    It is a photo with information on last Badue, first of

2    Steve.

3    Q.    Where does that come from?

4    A.    This comes from the State of California, Department of

5    Justice, Megan's law.

6    Q.    The database?

7    A.    Correct.

8    Q.    Megan's law database.  That information that's

9    provided by the local agencies?

10    A.    Correct.

11    Q.    When did you obtain a copy of that?

12    A.    This morning.

13    Q.    That's a certified copy?

14    A.    Yes, it is.

15         MR. DICK:  Ask that People's 10 be moved into

16    evidence.

17         MS. DANTO:  No objection.

18         THE COURT:  People's Exhibit marked 10 is received

19    into evidence.

20         (People's Exhibit number 10 was received in

21         evidence.)

22         MR. DICK:  I have no further questions.

23         THE COURT:  Cross examination.

24         MS. DANTO:  No questions, Your Honor.

25         THE COURT:  Is there any objection to excusing

26    this witness?

27         MS. DANTO:  No objection.

28         THE COURT:  Ms. Gallegos, you are excused.

1         THE WITNESS:  Thank you.

2         MR. DICK:  Your Honor, I have two other witnesses.

3    I know that one -- well, let me see if they are in the

4    hallway.

5         (Pause in proceedings.)

6         MR. DICK:  People call Officer Keo to the stand.

7                    TRAK KEO,

8    called as a witness on behalf of the People, being first

9    duly sworn, was examined and testified as follows:

10        THE CLERK:  Would you please state your name and

11   spell it for the record.

12        THE WITNESS:  First name T-R-A-K.  K-E-O.

13                DIRECT EXAMINATION

14   Q.   MR. DICK:  What is your current occupation and

15   assignment?

16   A.   City of Stockton police officer.

17   Q.   How long have you been a police officer?

18   A.   A year and a half.

19   Q.   What is your current assignment?

20   A.   Field services.  We call patrol.

21   Q.   Were you on duty on March 7 of -- March 6 of 2002 at

22   approximately 11 p.m.?

23   A.   Yes.

24   Q.   Do you recall where you were on that date at that

25   time?

26   A.   About Church and Sonoma.

27   Q.   That's in the city of Stockton?

28   A.   Yes.

1    Q.    What county is that?

2    A.    San Joaquin.

3    Q.    For the record, can you tell us approximately how far

4    Stockton is from the City of San Jose?

5    A.    I would say about a good hour, 45 minute drive.

6    Q.    Did you contact the subject on that date at that time

7    at that location?

8    A.    Yes, sir.

9    Q.    Is that person in court today?

10    A.    Yes, sir.

11    Q.    Can you please identify where that person is sitting,

12    what he's wearing?

13    A.    Wearing the orange clothing there.

14    Q.    When you say over there --

15    A.    Right next to the lady in the black shirt.

16          MS. DANTO:  I'll stipulate that he's identified my

17    client.

18          THE COURT:  I will accept the stipulation.

19    Q.    MR. DICK:  Did you have a conversation with the

20    defendant?

21    A.    Yes.

22    Q.    Did he give you a birthday?  Did he give you a name?

23    A.    When I made contact with him, he gave me his name as

24    James Pierce of birthday March 15, '61.  And we ran the name

25    in our computer system, nothing come up under that name.

26    Q.    Let me slow you down.  When you say you ran through a

27    computer system, what computer system did you run him

28    through?

1   A.    Our computer system is a database consisting of

2   anybody that have been stopped or have any kind of warrants

3   in the county, it all comes up under that system.

4   Q.    That person's name didn't come up at all?

5   A.    No.

6         THE COURT:  What was that name?

7         THE WITNESS:  James Pierce.  P-I-E-R-C-E.

8   Q.    MR. DICK:  What date of birth did he give?

9   A.    March 15 of '61.

10  Q.    Did you tell him that you thought he was giving you a

11  false name?

12  A.    I told him that the name didn't come out on our

13  computer system and he said that his mother could verify

14  what his name is and she was living at 921 South San Joaquin

15  Street.  And my partner and I drove to the location and met

16  with the lady there.  She came out and met with us while we

17  parked the patrol car on the street and she said that was

18  her son --

19        MS. DANTO:  I'm going to object as hearsay.

20        THE COURT:  The object is sustained.

21  Q.    MR. DICK:  Who was your partner?

22  A.    Officer Aguilar.

23  Q.    Did you make a determination if the defendant had

24  given you a false name?

25  A.    Yes.  It was kind of unusual.  In the area where the

26  defendant was is a very high narcotic area.  I had been

27  working the area for approximately six months at the time

28  and I dealt with a lot of people --

1    Q.    Let me ask you a question.  Did you make a

2    determination that the defendant was in fact not James

3    Pierce?

4    A.    It's like I said, it's very unusual for somebody not

5    to be in our computer system who hangs in that area.

6    Q.    After you spoke to the defendant, spoke to the

7    defendant's mother, did you make the determination of the

8    defendant's true name?

9    A.    Yes.

10   Q.    Was the defendant booked into custody?

11   A.    Yes.

12   Q.    At the time he was booked into custody, did he give a

13   different name?

14   A.    Yes.

15   Q.    What name did he give?

16   A.    Actually he didn't really give me a name.  His mom

17   did.

18   Q.    And what name did you use to book him under?

19   A.    Steve Badue.

20   Q.    Is that the name that you used to book him?

21   A.    Yes.

22   Q.    Did you determine a birthdate for Steve Badue?

23   A.    Yes.

24   Q.    What was that?

25   A.    January 4, 1966.

26        MR. DICK:  May I have a moment, Your Honor?

27        THE COURT:  Yes.

28        (Pause in proceedings.)

1    MR. DICK:  I have nothing further.

2    THE COURT:  Cross examination.

3    MS. DANTO:  No questions, Your Honor.

4    THE COURT:  Is there any objection to excusing

5    this witness?

6    MS. DANTO:  No.

7    THE COURT:  Officer Keo, you are excused.

8    MR. DICK:  Your Honor, my final witness is the

9    fingerprint examiner regarding the priors.  If I can have

10   one moment to see if he's outside in the hallway.  I don't

11   think he is.

12   THE COURT:  Yes.

13   (Pause in proceedings.)

14   MR. DICK:  He's not here.

15   Your Honor, my last witness is a witness who has

16   gone through the certified documents regarding the

17   defendant's priors and compared fingerprints.  I told him

18   not to be here until 10.  I can give a call over to his

19   office.

20   THE COURT:  We'll take a five-minute recess.

21   Court is in recess.

22   (A short break was taken, after which the

23   following proceedings were had:)

24   THE COURT:  The Court is again in session and

25   everyone is present.

26   Please proceed, Mr. Dick.

27   MR. DICK:  Your Honor, I have in my hand what's

28   been marked People's 12 and 13 for identification.  They

1      appear to be certified copies of booking photos.   Ask that

2      they be moved into evidence as People's 12 and 13.

3                   MS. DANTO:   No objection.

4                   THE COURT:   People's Exhibits marked 12 and 13 are

5      received into evidence.

6                   (People's Exhibits Number 12 and 13 were received

7                   in evidence.)

8                   MR. DICK:   At this time the People call Richard

9      Peretti to the stand.

10                          RICHARD PERETTI,

11     called as a witness on behalf of the People, being first

12     duly sworn, was examined and testified as follows:

13                   THE CLERK:   Would you please state your name and

14     spell it for the record.

15                   THE WITNESS:   Richard Peretti.   P-E-R-E-T-T-I.

16                          DIRECT EXAMINATION

17     Q.     MR. DICK:   Sir, what do you do for a living?

18     A.     I'm a latent fingerprint examiner with the San Jose

19     Police Department.

20     Q.     What is a latent fingerprint examiner?

21     A.     We examine fingerprints that are submitted from

22     various agencies and booking authorities.   We also do

23     comparisons of fingerprints that are developed at crime

24     scenes and submitted for comparison.

25     Q.     How long have you been so employed?

26     A.     With San Jose Police Department, two years.   I was

27     employed with the Contra Costa County Sheriff's Department

28     for three and a half years prior.

1    Q.    You have doing this for five and a half years?

2    A.    Yes.

3    Q.    Have you had educational training in how to compare

4    and read latent fingerprints?

5    A.    Yes, I have.

6          MR. DICK:  Counsel, will you stipulate that

7    Richard Peretti is a qualified expert in the ability to

8    analyze and compare latent fingerprints?

9          MS. DANTO:  I'm prepared to stipulate that he can

10    testify as an expert in this area, Your Honor.

11          THE COURT:  I will accept the stipulation.

12    Q.    MR. DICK:  Sir, did you -- when you are comparing

13    fingerprints, what are some of the things that you are

14    looking for?

15    A.    We are looking to make sure that the fingerprints have

16    the same topographical relationship, they are the same

17    patterns or that they be loops, whirls.  They are looking

18    for unique characteristics, scars, deformities.  We are

19    looking at the ridge detail to see if it has corresponding

20    points in both the known and unknown or the two prints that

21    are being compared.  We look for minutia or points which are

22    unique items such as ending ridges, the splitting of a

23    ridge, anything that would have similarities or noticeable

24    dissimilarities, where information is lacking or is

25    different.

26    Q.    What is a ridge?

27    A.    A ridge is the -- on your feet and your hands, you

28    have friction ridge skin which is areas where there are

1    mounds or valleys.  Very similar to rubber stamp that you

2    would use in marking paper, when you leave a latent or an

3    inked fingerprint, the high portion, the ridges, are

4    recorded leaving individual and unique characteristics.

5    Q.    When a person, if they are being inked and leave a

6    fingerprint, that print will show the ridges on the print,

7    is that correct?

8    A.    Yes.

9    Q.    Is it true that every person has unique fingerprints?

10   A.    Yes.

11   Q.    Did you review a series of documents pursuant to my

12   request?

13   A.    Yes, I did.

14   Q.    When you reviewed those documents, how do you indicate

15   that you have reviewed them?  Do you mark them?

16   A.    Upon completing the evaluation, yes, we mark -- I mark

17   my initials next to the prints in which I compared.

18             MR. DICK:  Your Honor, may I approach?

19             THE COURT:  You may.

20   Q.    MR. DICK:  I'm going to show you what's been marked

21   People's Six and moved into evidence.  That appears to be a

22   969 packet.  Did you review the fingerprints on that packet?

23   A.    Yes.

24   Q.    And how do you know that?

25   A.    I have my initials and the date that I evaluated them

26   near the right thumb on the fingerprint card.

27             MR. DICK:  Your Honor, I have in hand what's been

28   marked as People's 14 for identification.  I have shown to

1    defense counsel.  It appears to be a booking photograph and

2    fingerprints from one Steve Badue.

3    Q.    MR. DICK:  Sir, showing you what's been marked

4    People's 14, have you reviewed the fingerprints on People's

5    14?

6    A.    Yes.

7    Q.    And again as your initials on that?

8    A.    Yes, initials and dates.

9           MR. DICK:  Your Honor, I have in my hand what's

10    been marked People's 15 for identification.  I have shown

11    this to defense counsel.  It appears to be a certified

12    booking form from the Stockton Police Department for one

13    Steve Kenneth Badue.

14    Q.    MR. DICK:  Sir, did you review the fingerprints on

15    that?

16    A.    Yes.

17    Q.    And again your initials are on that?

18    A.    Yes.

19           MR. DICK:  Your Honor, I have in my hand what has

20    been marked People's 16, shown to defense counsel.  It

21    appears to be a certified copy of a booking photo for a

22    Steve Badue for 314 out of Stockton.

23    Q.    MR. DICK:  Showing you People's 16, did you review

24    People's 16?

25    A.    Yes, I have my initials on there as well.

26           THE COURT:  Mr. Dick, I'm sorry.  For Exhibit 15,

27    the booking form, was that for a particular conviction or

28    arrest.

1      MR. DICK:  That is a conviction date of 3/19/98

2  for 314.

3  Q.    MR. DICK:  Sir, I have in my hand what's been marked

4  as People's 17.  Appears to be a booking photo for a 314 out

5  of San Joaquin County.  Did you review these documents?

6  A.    Yes, I have initialled those documents as well.

7      MR. DICK:  Your Honor, I have in my hand what has

8  been marked as people's 18, a certified copy of a SS 8102.

9  I believe that this will be the same document, a photocopy

10  of People's Seven, that's been moved into evidence.

11  Q.    MR. DICK:  Sir, did you review People's 18?

12  A.    Yes, I did.

13  Q.    How do you know that?

14  A.    My initials and date.

15      MR. DICK:  I would ask that People's 14 through 18

16  be moved into evidence.

17      MS. DANTO:  I have no objection.

18      THE COURT:  People's Exhibits marked 14, 15, 16,

19  17 and 18 are received into evidence.

20      (People's Exhibits Number 14, 15, 16, 17 and 18

21      were received in evidence.)

22  Q.    MR. DICK:  Based on your review of the documents, did

23  you reach a conclusion if one or different people made the

24  prints on People's 14 through 18?

25  A.    Yes, I reached a conclusion.

26  Q.    What is that conclusion?

27  A.    All the prints were made by the same individual.

28  Q.    And how do you know that?

1    A.    All of the prints were examined and compared against

2    each other.  I found no dissimilarities in any of the prints

3    that they would have come from a different individual.

4    Q.    In other words, it's the same print?

5    A.    Yes.

6              MR. DICK:  Can I have one moment, Your Honor?

7              THE COURT:  Yes.

8              (Pause in proceedings.)

9              MR. DICK:  I have nothing further.

10             THE COURT:  Cross examination.

11             MS. DANTO:  No questions, Your Honor.

12             THE COURT:  Is there any objection to excusing

13   Mr. Peretti?

14             MS. DANTO:  No.

15             THE COURT:  Mr. Peretti, you are excused.

16             MR. DICK:  Your Honor, if I can inquire from your

17   clerk if all the People's exhibits have been moved into

18   evidence.

19             THE CLERK:  They have all been admitted.

20             MR. DICK:  Your Honor, just for the record, I

21   would ask the Court to take judicial notice that the City of

22   San Jose is in the County of Santa Clara.  I believe that

23   one of the two witnesses testified to the County of Santa

24   Clara but the other one did not.  I ask the Court to take

25   judicial notice of that.

26             THE COURT:  Any objection?

27             MS. DANTO:  No.

28             THE COURT:  The Court will take judicial notice of

1    that fact.

2              MR. DICK:   Thank you, Your Honor.   The People

3    rest.

4              THE COURT:   Does the defense wish to present

5    evidence?

6              (Discussion held off the record.)

7              MS. DANTO:   Your Honor, at this point the defense

8    rests.

9              THE COURT:   We will have closing argument.   I

10   don't know if counsel are prepared at this time.   If you

11   would like a recess.

12             MR. DICK:   People are ready.

13             THE COURT:   You are ready.

14             Mr. Dick, would you please take it slowly.

15             MR. DICK:   I apologize to the court reporter.   I

16   know that I speak way too quickly.   I am told by many a

17   court reporter that.

18             The laws under 290 are very clear.   They are

19   outlined on the back of the 8102 form which the defendant

20   has filled out on at least three separate occasions.   So he

21   knows of his requirements and those requirements include

22   registering within five days upon your release from custody

23   and registration on your birthday.

24             The defendant last registered in San Jose on June

25   18 of 2000 -- actually 2001.   I apologize.   He is then

26   placed back in custody on a parole violation.   He is

27   released to Santa Clara County on October 10 of 2001.   He

28   does not update his registration within the five days upon

1    his release.

2       He then fails to register on his birthday which is

3 the basis for the violation in Count One when he does not

4 register within five working days of his birthday of January

5 4. The certified documents, and there are numerous ones,

6 that I have supplied to the defendant have the defendant's

7 picture and birthdate on them and they are all the same and

8 they are all consistent. He do not register within five

9 working days of his birthday. He does not register here in

10 San Jose as there are no updated documents in the 8102 file

11 and also he does not register anywhere in the state. There

12 is no update on his VCIN.

13       He is finally found in March of 2002, March 7,

14 March 6, late at night, approximately eleven o'clock at

15 night. He gives a false name. He has -- we know that it's

16 willful failure to appear because he absconds from parole.

17 He gives a false name. We know it's a knowing failure to

18 appear, failure to register because he had filled out the

19 8102 previously.

20       There are certified documents I provided to the

21 Court that indicate the defendant has suffered prior

22 convictions for 314, for a 290 and also pursuant to

23 certified documents he has not been free from incarceration

24 for the last five years pursuant to 667.5(b) due to a

25 conviction for an 11350.

26       Based on this, the People would suggest to the

27 Court that the defendant has violated the elements of Penal

28 Code Section 290, he has suffered a prior conviction and he

1    has suffered a prior conviction and has not remained free of

2    incarceration for the last five years.  I would ask the

3    Court to find the defendant guilty as charged.

4         THE COURT:  You didn't say the prior conviction

5    for the 667.5(b) was 11550?

6         MR. DICK:  I said 11350.  It's 11350.

7         THE COURT:  Yes.

8         MR. DICK:  Yes, it is an 11350.  I apologize if I

9    said 11550.

10        MS. DANTO:  Your Honor, I'm prepared to submit it.

11        THE COURT:  I will recess for a little bit, review

12   all of the documents and I will return with a decision.

13        (A short break was taken, after which the

14        following proceedings were had:)

15        THE COURT:  The Court is again in session in the

16   matter of the People of the State of California versus Steve

17   Badue.  Both counsel are present along with the defendant.

18        I have reviewed all of the documents and have

19   considered all of the evidence in this case and I find that

20   the People have met their burden of proof beyond a

21   reasonable doubt.  And I find that the defendant Steve Badue

22   is guilty in Count One of a violation of Penal Code Section

23   290(g)(2) and I find that the allegation pursuant to Penal

24   Code Section 667.5(b) is true.

25        This matter is referred to the probation

26   department for a full presentence investigation and report.

27        Is time waived or not waived?

28        MS. DANTO:  No.

1          When do you do sentencing?

2          THE COURT:  Thursday afternoons at 1:30.

3          MS. DANTO:  That would be --

4          THE COURT:  The matter is set for sentencing for

5     March 6 at 1:30 in this department.

6          MS. DANTO:  Thank you, Judge.

7          MR. DICK:  Thank you, Your Honor.

8          THE COURT:  You are welcome.

9          (Whereupon, court was adjourned on this matter.)

10                     ---o0o---

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

```
1    STATE OF CALIFORNIA      )
                              ) ss.
2    COUNTY OF SANTA CLARA    )

3

4         I, CINDI M. JOHNSON, hereby certify:  That I was

5    appointed by the Court to act as the Court Reporter in the

6    above-entitled action; that I reported the same in stenotype

7    and thereafter transcribed the same into typewriting as

8    appears by the foregoing transcript; that said transcript is

9    a full, true and correct statement of this proceeding.

10        In said capacity, I have adhered to Civil Code of

11   Procedure Section 237(a)(2), Sixth Appellate District

12   Miscellaneous Order 96-2, by sealing through redaction all

13   references to juror identifying information, including but

14   not limited to names, addresses and telephone numbers.

15        Executed April 23, 2003, at San Jose, California.

16

17                         _____
                           CINDI M. JOHNSON, CSR
18                         CERTIFICATE No. 10125

19

20

21

22

23

24

25

26
```

TO THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

IN AND FOR THE SIXTH APPELLATE DISTRICT

PEOPLE OF THE STATE
OF CALIFORNIA,          )
                        )
        Plaintiff-Respondent,    )    NO. CC241061
                        )
                        )    SANTA CLARA COUNTY
                        )
                        )
        -vs-            )
                        )
STEVEN BADUE,          )
                        )
        Defendant-Appellant.    )
_____)

REPORTER'S TRANSCRIPT ON APPEAL
FROM THE JUDGMENT OF THE SUPERIOR COURT
OF THE STATE OF CALIFORNIA,
IN AND FOR THE COUNTY OF SANTA CLARA
HONORABLE <u>RISE PICHON</u>, JUDGE

Volume  III

March 6, 2003

<u>Pages 81 through 86</u>

<u>APPEARANCES:</u>

FOR APPELLANT-DEFENDANT:    ATTORNEY GENERAL
                            455 GOLDEN GATE AVENUE
                            ROOM 11000
                            SAN FRANCISCO, CA  94102

FOR RESPONDENT-PLAINTIFF:    SIXTH DISTRICT APPELLATE PROGRAM
                             100 NORTH WINCHESTER BLVD.
                             SANTA CLARA, CA  95050

OFFICIAL COURT REPORTER:    JOANNE M. ROCHA, CSR 7655



1              IN THE SUPERIOR COURT FOR THE STATE OF CALIFORNIA

2                 SANTA CLARA COUNTY JUDICIAL DISTRICT

3              BEFORE THE HONORABLE RISE PICHON, JUDGE

4                        DEPARTMENT NO. 36

5                            ---oOo---

6

7

8    THE PEOPLE OF               )    NO. CC241061
     THE STATE OF CALIFORNIA,    )
9                                )
                    Plaintiff,   )    Sentencing Hearing
10                               )
                    -vs-         )
11                               )
     STEVEN BADUE,               )
12                               )
                    Defendant.   )
13   _____ )

14

15

16                           ---oOo---
                 REPORTERS TRANSCRIPT OF PROCEEDINGS
17
                           March 6, 2003
18

19

20

21   A P P E A R A N C E S:

22

23   FOR THE PEOPLE:          OFFICE OF THE DISTRICT ATTORNEY

24                            STEVEN DICK, D.D.A.

25
     FOR THE DEFENDANT:       OFFICE OF THE PUBLIC DEFENDER
26
                             RANDY DANTO, D.P.D.
27

28   OFFICIAL COURT REPORTER:   JOANNE M. ROCHA, CSR 7655

```
 1 │ SAN JOSE FACILITY                           DEPARTMENT 36
   │                          PROCEEDINGS
 2 │
 3 │          THE COURT:  This is the matter of the People of
 4 │ the State of California versus Steven Badue.
 5 │          MS. DANTO:  Your Honor, Mr. Badue is present in
 6 │ custody.  I am Randy Danto appearing on his behalf.
 7 │          MS. DICK:  Steven Dick for the People.
 8 │          THE COURT:  No middle name?
 9 │          THE DEFENDANT:  Yes.  No middle name.
10 │          THE COURT:  Steven Badue?
11 │          THE DEFENDANT:  Yes.
12 │          THE COURT:  The matter is on calendar for
13 │ sentencing.  Do you waive arraignment for judgment and
14 │ sentence?
15 │          MS. DANTO:  Yes, your Honor.
16 │          THE COURT:  Is there any legal cause why judgment
17 │ should not be imposed?
18 │          MS. DANTO:  No.
19 │          THE COURT:  Do you waive the five-day rule
20 │ regarding receipt of the probation report?
21 │          MS. DANTO:  Yes.
22 │          THE COURT:  Have both counsel had the opportunity
23 │ to review the report?
24 │          MS. DANTO:  Yes, your Honor.
25 │          MS. DICK:  Yes, your Honor.
26 │          THE COURT:  I have read and considered the
27 │ probation officer's report including the attachments, the
28 │ statements in mitigation and aggravation and criminal
```

1    history.  The Court's tentative decision is to deny probation

2    and impose two years in the state prison.  Two years is the

3    middle term and the punishment of one additional year

4    pursuant to Penal Code Section 667.5, Subsection B, will be

5    stricken pursuant to Penal Code Section 1385 for the reason

6    that the Defendant has already served eleven months on a

7    violation of parole which included this offense.

8         Counsel, do you wish to be heard?

9              MS. DANTO:  No, your Honor.  We are prepared to

10   submit it.

11             MR. DICK:  Submitted, your Honor.

12             THE COURT:  Probation is not being granted in

13   this case.  After considering the criteria set out in the

14   Rules of Court, probation is not being granted because the

15   Defendant has demonstrated that he is not willing to comply

16   with the conditions of probation.  He has violated parole

17   three times in the first year following his release from

18   prison and he was on parole at the time of this offense.  At

19   this time, probation is denied.

20        Mr. Badue, you are committed to the California

21   Department of Corrections for two years.  Two years is the

22   middle term.  You have the following credits: 144 actual days

23   plus 72 days 419 credits for a total of 216 days credit for

24   time served.  You are advised that you are subject to parole

25   supervision for up to three years.  There will be no General

26   Fund Fine and you are ordered not to possess a firearm

27   pursuant to Penal Code 12021, a restitution fine of

28   $400.00 -- restitution fine in the amount of $400.00 is

1   imposed pursuant to Penal Code Section 1202.4, Subsection B,

2   an additional restitution fine in the amount of $400.00 is

3   imposed and suspended pursuant to Penal Code Section 1202.45.

4   Attorney's fees are waived.

5          And Mr. Badue, I will advise you of your appeal

6   rights.

7                 MS. DANTO:  Your Honor, my client has prepared

8   his own notice of appeal which I would like to file at this

9   time with your clerk.

10                THE COURT:  All right.  Is there anything else on

11  this case?

12                MS. DICK:  No.  Thank you, your Honor.

13                          ---oOo---

```
 1    STATE OF CALIFORNIA        )
                                 )
 2                               )
 3    COUNTY OF SANTA CLARA      )
 4
 5
 6            I, JOANNE M. ROCHA, CSR, do hereby certify:
 7            That I am a duly appointed and acting shorthand
 8    reporter of the Superior Court of the State of California in
 9    and for the County of Santa Clara;
10            That the foregoing proceedings were reported by
11    me in stenotype at the time and place mentioned and
12    thereafter reduced to typewriting under my direction;
13            That said transcript is a true and correct
14    statement of the proceedings and evidence given and had in
15    said matter to the best of my ability.
16        In said capacity, I have adhered to Civil Code of
17    Procedure Section 237(A)(2), Sixth Appellate District
18    miscellaneous order 96-2, by sealing through redaction all
19    references to juror identifying information, including but
20    not limited to names, addresses and telephone numbers.
21
22        DATED:  This 10th day of    April        2003.
23
24
25
26
27                       Joanne M. Rocha, CSR #7655
28
```